JjBAGNERIS, Judge.
I. PROCEDURAL HISTORY
On December 1,1993, defendant, Romal-ice C. McGhee, was charged by bill of information with simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2. At his arraignment on December 6, 1993, defendant entered a plea of not guilty. A motions hearing was held on January 28, 1994 at which defendant’s motion to suppress confession was determined to be moot, and his motions to suppress identification and evidence were denied. Probable cause was found. In addition, the trial court appointed a sanity commission to determine defendant’s competency to stand trial.
After a sanity hearing on March 1, 1994, defendant was transferred to Feliciana Forensic Facility for further evaluation. Another hearing was held on February 21,-1995 at which defendant was found sane *224 and competent to stand trial. Following, defense motions were filed for the appointment of a sanity commission, such motions were granted. On September 12, 1995, defendant withdrew his prior | gplea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. Defendant filed another motion for a sanity commission on September 28, 1995, which was granted by the trial court. A sanity hearing was conducted on November 3, 1995. At the conclusion of the hearing the trial judge left the matter open for further testimony; however, no other hearing was held and the matter was set for trial.
After a jury trial on April 9, 1996, defendant was found guilty as charged. On April 30, 1996, defendant filed a motion for new trial, which was denied. The court sentenced defendant to serve eight years at hard labor without benefit of probation, parole or suspension of sentence.
The State subsequently filed a multiple bill of information, which defendant moved to quash. A multiple offender hearing was held on July 10, 1997 and defendant was adjudicated a fourth felony offender. Defendant waived delays and the trial court vacated the sentence previously imposed and sentenced defendant to serve twenty years at hard labor with credit for time served. The trial court denied defendant’s motion to quash. Defendant appeals his conviction and sentence.
II. STATEMENT OF THE FACTS
On November 13, 1993, Penny Merrick was approaching her residence when her neighbor, Norman Detrick, informed her that an unknown man was in her house. Merrick then crossed the street in front of her house and observed a man walking around her house. Defendant exited Merrick’s, at which time she approached him and inquired as to what he was doing in the house. Defendant 13responded that he was visiting the people who lived there. Merrick told defendant that she lived in the house and that the police had been called and that she got a good look at his face. Defendant turned, grabbed a bike that was on the other side of the fence and rode off.
Approximately four minutes later, a police unit arrived. Merrick recounted the incident to the officer and gave him a description of defendant. She also told the officer the direction in which defendant left. The officer drove off to search for defendant, and within a few minutes knocked on Merrick’s door and stated that he had a suspect. He asked her to look at the subject and see if the subject was the perpetrator. Merrick walked to the police car and identified defendant.
Merrick testified her home was ransacked. Her daughter’s wallet, Walkman and jewelry were missing. Clothes and a stereo were by the front door. A window in her bedroom was broken and there was a cinder block below the window that had not been there before the burglary. Merrick stated that she did not give defendant permission to enter her home. She further testified that when she spoke with defendant he appeared coherent and did not smell of alcohol.
New Orleans Police Officer Bruce God-frey testified that he responded to a call of criminal trespass at 1712 Valmont Street. When he arrived on the scene, he observed a woman standing in the middle of the block flagging him down. The woman told him that someone had just exited her house, got on a bike and fled the scene. The woman gave Godfrey a description of the perpetrator. The officer left to check the immediate area for the suspect. God-frey located defendant and |4attempted to stop him by turning on his lights and siren. Defendant did not stop, but proceeded to peddle faster and turned the corner. God-frey followed. Defendant then jumped off his bike and ran into someone’s backyard while Godfrey pursued on foot. Godfrey eventually apprehended defendant in a vacant lot. During the chase Godfrey contacted Officer Anthony Monaco for assistance. When Monaco arrived on the scene, they placed defendant in Monaco’s *225 vehicle. Defendant appeared to be alert. Godfrey advised defendant that he was detaining him as a suspect in a burglary. Defendant appeared to understand what Godfrey said. Godfrey noticed a strong smell of alcohol on defendant, however, he was able to walk without assistance.
After they placed defendant in Monaco’s vehicle, the officers relocated to Valmont Street where they contacted the victim. The victim identified defendant as the man who was in her house. The officers arrested defendant and advised him of his rights, which defendant appeared to understand. At the time of his arrest defendant was awake and alert.
After arresting defendant, Godfrey conducted a field search on defendant and found jewelry, a wallet and a walkman. The victim identified these items as belonging to her daughter. The victim stated that she did not know defendant and did not give him permission to enter her house. Godfrey observed the crime scene and witnessed that the house was ransacked. There was a broken window on the side of the house and a concrete block below the window. He called the crime lab to process the scene.
| sAfter the chase Godfrey called for an emergency medical unit. Both defendant and the officer sustained injuries during the pursuit. Defendant became unconscious immediately before the emergency medical unit arrived. He was transported to Charity Hospital. Godfrey followed the ambulance to the hospital. After three hours defendant was released to the officer’s custody and transported to Central Lock-up. Defendant was conscious in the hospital.
Officer Monaco testified he received a call from Godfrey requesting assistance in defendant’s apprehension and arrest. By the time Monaco arrived at the scene, Godfrey had defendant handcuffed and was walking out of a vacant lot where Godfrey had apprehended defendant. Godfrey placed defendant in Monaco’s police vehicle. Monaco testified that defendant appeared to be normal. Both defendant and Godfrey had cuts and bruises from the pursuit. Godfrey called for an emergency medical unit. After defendant was placed in the police vehicle, they relocated to the intersection of Danneel and Valmont Streets where they asked the victim to identify defendant as the perpetrator. Defendant was conscious when this occurred. Shortly thereafter, defendant lost consciousness. The emergency medical unit transported defendant to Charity Hospital. Godfrey went to Charity with defendant.
Cecelia McGhee, defendant’s wife, testified that she and defendant drank a case of beer together the morning of November 13, 1993. They were celebrating the possibility of a job for defendant. Defendant left their house at approximately 2:00 in the afternoon on his bike. Defendant was going to his mother’s house to [ ñtell her about the job. When defendant left, he appeared to be functioning normally. However, McGhee stated that defendant has a history of blackouts which are brought on by alcohol. The blackouts have become more frequent as defendant has aged.
Dr. Marc Zimmerman, a psychologist, interviewed defendant on[1] two occasions, September 28, 1995 and November 17, 1995. Defendant provided Dr. Zimmerman with a history of the offense in which he told Zimmerman that he had been drinking beer with his wife that day because they were celebrating the possibility of a job. Defendant was riding his bike, ran into something, probably a curb, and fell over. He stated that he did not remember anything until he woke up in Charity Hospital. Defendant said he was confused and had difficulty with his memory, he had no memory about the burglary. Zimmerman also read the police report and spoke with defendant’s wife about previous blackouts. Zimmerman stated that defendant’s blackouts could be related to his abuse of alcohol, organic brain damage *226 or a combination of both. He believed defendant suffers from chronic alcoholism.
During the interviews, Zimmerman administered several tests to defendant. After reviewing the results of these tests, he believed defendant suffers from brain dysfunction, probably fairly pervasive on the right side of the brain. There is probably organic brain damage from defendant’s alcohol abuse and dependence, which can be caused by chronic use of alcohol. Zimmerman further testified that a person could have a lapse in memory and still function at a normal rate in the |7community. When a person suffers from a lack of memory, the person’s understanding of the difference between right and wrong would depend upon the problem causing the memory lapse. Individuals with dysfunction in the frontal lobe may not comprehend the difference between right and wrong as the frontal lobe is where such decisions are made and memory is stored. People who have organic personality disorders may not know the difference between right and wrong. Also, people with organic psychosis may not be able to comprehend the difference between right and wrong. Zimmerman believed defendant has some right frontal lobe damage, however, he admitted that a person might suffer from some frontal lobe damage and understands the difference between right and wrong. Zimmerman could not state whether the defendant was insane at the time of the burglary.
Dr. Arthur Samuels, a psychiatrist, evaluated defendant on October 19, 1995. According to Samuels, defendant had a limited recall of the events surrounding the burglary. He remembered riding his bike over a curb, falling down and hitting his head. The next thing he remembered was waking up in Charity Hospital. Defendant told Samuels that when he woke up in Charity his memory was fuzzy. He had little control over his memory for approximately twenty-four hours. Samuels spoke with defendant’s wife about defendant’s history of blackouts. She told Samuels that when her husband drank he was difficult to contact and often became confused. Defendant told Samuels he had a history of alcoholism from the age of seven, in addition to a history of drug abuse, involving [scocaine and marijuana. Defendant told Samuels of hallucinations in which defendant heard his deceased brother’s voice.
Samuels believed defendant suffers from an organic brain disease with an amnesic disorder secondary to chronic alcoholism. A person is not aware of what he or she is doing when such an episode occurs. That person would not be able to distinguish right from wrong. Defendant was sane when Samuels interviewed him. He believed defendant’s acts were the result of acting out a psychological union with his deceased brother. Samuels admitted that a person could suffer from brain damage or brain dysfunction and still be sane. As a result of his alcoholism, Samuels believed defendant suffers from “fugue”-like states, which prevent defendant from comprehending the difference between right and wrong. As a result of these states, defendant is out of touch with reality and suffers memory loss. Defendant’s memory loss is caused by his alcoholism. A person who loses his memory as a result of alcoholism may know the difference between right and wrong. Samuels believed that defendant is incapable of understanding the difference due to the episodic nature of defendant’s behavior and the severity of his confusion when he awakens.
On rebuttal, Dr. Richard Richoux, a psychiatrist, testified that he examined defendant on January 30, 1995. Richoux had been appointed to a sanity commission to determine defendant’s competency to stand trial. He determined that defendant was competent to stand trial. Defendant related to Richoux that he had a history of alcohol abuse. Defendant also stated he had no recollection of the 1 flburglary. Ri-choux reviewed the police report and defendant’s records from Feliciana Forensic Facility. Richoux found that there was *227 nothing to indicate that defendant was legally insane at the time of the burglary. He testified that there was no way of knowing if defendant was telling the truth about his memory loss. If defendant truly suffered memory loss, such loss usually occurs in people who are intoxicated. Such a state is called an alcohol-induced blackout, which is very common. An individual can be in an alcohol-induced blackout and still function in society. In most instances, people with memory deficits are not insane by legal definition. Richoux opined that defendant is an alcoholic. His actions on the day of the burglary do not suggest that defendant suffers from a mental disease or mental illness. Richoux believes that defendant did not suffer from alcohol induced' persistent amnesiac disorder at the time of the incident. Further, a person suffering from that disorder would not necessarily be legally insane at the time of the offense. He examined defendant for organic brain damage and found none; however, excessive drinking can cause brain damage. Some people who are suffering an alcohol induced black out are unable to distinguish right from wrong because they are suffering from other psychiatric problems simultaneously with the alcohol induced blackout.
The parties stipulated that if Dr. Sarah Deland were called to testify, her opinion with regard to defendant’s sanity at the time of the offense would be the same as Dr. Richoux’s.
JjjIII. DISCUSSION AND RECOMMENDATION
Errors Patent and Appellate Counsel’s Motion to Withdraw
A review of the record for errors patent reveals errors in the imposition of the original sentence. The trial court sentenced defendant to serve eight years at hard labor without benefit of probation, parole or suspension of sentence. The sentence was imposed immediately after the trial court denied defendant’s motion for new trial. There was no indication in the record that the defendant waived his right to a delay of twenty-four hours as required by La.C.Cr.P. art. 873.
In State v. Augustine, 555 So.2d 1331 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided defendant’s sentence if defendant attacks his sentence, even though defendant fails to specifically allege this failure as an error on appeal. However, this court, in State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991 ), held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, in the present case where no error is raised regarding defendant’s sentence, the failure of the trial court to observe the delay period is considered harmless error.
However, under La. R.S. 14:62.2 the sentence imposed by the trial court is illegal. This statute provides that one who is convicted of simple burglary of an inhabited dwelling “shall be imprisoned at hard labor for not less that one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years.” The trial court stated that the entire sentence was to be served 1 ,, without benefit of parole, probation or suspension of sentence. Thus, the defendant’s sentence should be amended to provide that the defendant is denied benefits for the first year of his sentence.
On its face, it appears these errors became moot after the trial court adjudicated defendant a multiple offender and vacated the original sentence. However, because this court finds that defendant’s multiple bill adjudication must be vacated, these errors patent must be considered and corrected.
Appellate counsel for defendant filed errors patent briefs and motions to withdraw.[1] Counsel complied with the proce *228 dures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this court in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990) and the Louisiana Supreme Court in State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel has moved to withdraw because they believe, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. Counsel has reviewed all available transcripts and have found no trial court rulings, which arguably support the appeal. A copy of the briefs was forwarded to the appellant, and this Court informed defendant that he had the right to file a brief on his own behalf. He has filed a pro se brief alleging six assignments of error; two of which we find have merit.
|-i gIn addition, as per State v. Benjamin, swpra, the court has performed an independent, thorough review of all the pleadings filed in the district court, all minute entries of the district court proceedings, the bill of information and all transcripts contained in the appeal record. We find that defendant was properly charged by bill of information with a violation of La. R.S. 14:62.2. Defendant was present and represented by counsel at arraignment, all hearings, trial, and sentencing. The State proved every element of simple burglary of an inhabited dwelling beyond a reasonable doubt. An independent review reveals no non-frivolous issues, and a review of all transcripts contained in the appeal record reveals no trial court ruling that arguably supports the appeal of the conviction for simple burglary. However, the record is devoid of the exhibits introduced at the multiple offender hearing, thus consideration of defendant’s pro se assignments of error concerning the multiple offender adjudication is not possible.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant contends the trial court erroneously denied his motion for new trial because he was entitled to an examination to determine brain damage. La.C.Cr.P. 851 sets forth the grounds upon which a new trial may be granted:
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at |13the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discoverable before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The motion for a new trial is based on the supposition that injustice has been done to the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
Defendant is not entitled to a new trial. Defendant’s experts testified at trial that they believed defendant had brain damage in the right frontal lobe. The *229 State’s expert refuted their testimony by testifying that he examined the defendant for brain damage and found none. The jury heard the experts’ testimony and was in a better posture to evaluate the credibility of the witnesses, absent clear error we will not reevaluate such credibility. Thus, the trial court did not err when it denied the defendant’s motion for new trial.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO

The defendant further argues that the trial court erred when it allowed defense counsel to withdraw without defendant’s consent. Defendant does not give any specific details in his appellate brief; however, he refers to a pro se writ application (95-K-1356) which he filed with this Court in 1995. In that writ application, defendant alleged he was not receiving effective assistance from his newly appointed counsel. In a prior writ (95-K-0917), defendant alleged that his 114appointed counsel of three years, Hans Sinha, was removed from the case without cause. He also alleged that he filed an ex parte injunction seeking to bar the removal of Mr. Sinha. Because the record failed to support relator’s contention that Mr. Sinha was removed, the writ was denied. In writ 95-K-1356, defendant requested that his claims in writ 95-K-0917 be reconsidered, contending that Mark Vicknair had been appointed to represent him at trial. The minute entries reveal that Vicknair was representing defendant on June 15, 1995. The record did not reveal the reason for the change in attorneys. This Court denied the defendant’s writ application on July 17, 1995; concluding the record failed to show that defendant was being denied effective assistance of counsel.
Although defendant has the right to court appointed counsel, defendant does not have the right to have a particular attorney appointed to represent him. State v. Harper, 381 So.2d 468 (La.1980). Mr. Sinha was appointed to represent defendant after his arraignment. Mr. Sinha represented defendant until June 15, 1995 at which time Mr. Vicknair was appointed. The record does not provide the reasons for the change of attorneys. However, defendant’s consent is not needed to allow an appointed attorney to withdraw so long as the trial court appoints another attorney to represent defendant.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE

Defendant also suggests that the trial judge should have recused himself. Defendant contends that the trial judge represented him in a civil matter when the |1Btrial judge was a supervising attorney with the Loyola Law Clinic. However, there is nothing in the record to support defendant’s allegations. Moreover, defendant never filed a motion to recuse the trial judge.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

Defendant claims the trial court should have granted a mistrial when Dr. Richoux referred to defendant’s medical records from Feliciana Forensic Facility. Dr. Richoux stated upon direct examination that he reviewed defendant’s records from Feliciana Forensic Facility as a part of his evaluation of defendant. Defendant had been committed to the Feliciana Forensic Facility for several months in 1994 for treatment and evaluation. While Dr. Richoux stated that he reviewed the records, he did not discuss the contents of the records. Further, defendant did not object to the witness’ testimony about the medical records. Thus, defendant is precluded from raising any objection to the testimony on appeal. La.C.Cr.P. article 841. In addition, the State did not introduce the medical records into evidence.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FIVE

Defendant also suggests that he was prejudiced by juror misconduct during the *230 trial. The defendant contends that at least one juror fell asleep during the trial. Again, there is nothing in the record to support defendant’s allegations. The record is devoid of any information concerning a juror sleeping during the proceedings.
[iriThis assignment is without merit.

PRO SE ASSIGNMENTS OF ERROR NUMBERS SIX AND SEVEN

In a supplemental pro se brief, defendant attacks his multiple bill conviction. The defendant argues that the trial court erred when it denied defendant’s motion to quash the multiple bill of information. Defendant contends that the State failed to meet its burden of proof, as the minute entries from the prior offenses were all pre-printed fill in the blank forms. Defendant further avers that the State failed to prove that his prior convictions were felonies under Louisiana law. The State relied upon defendant’s prior convictions in Florida to allege his status as a fourth felony offender. These convictions included forgery in 1986, attempted burglary and simple escape in 1988.
It is apparent from the transcript of the multiple bill hearing that the State introduced documents from defendant’s three prior Florida convictions to support the allegations of the multiple bill of information. However, these exhibits were not included in the appeal record. Further, this court has been unable to obtain the exhibits from other sources. As these documents are not available, it is not possible to determine the merits of defendant’s assignments of error and whether the State met it’s burden of proof at the multiple bill hearing. Therefore, the defendant’s adjudication and sentence under the multiple offender statute should be vacated. La. Const. art. I, § 19 (1974); State v. Ford, 338 So.2d 107 (La.1976).
Accordingly, the defendant’s conviction for simple burglary is affirmed. Defendant’s adjudication and sentence under the multiple offender statute is |17vacated. The original sentence is amended to provide that only one year of the sentence is to be served without benefit of parole, probation or suspension of sentence, and as amended, re-imposed. Appellant counsel’s motion to withdraw is granted. The case is remanded to the Criminal District Court for the Parish of Orleans.
J^CONVICTION AFFIRMED; MULTIPLE BILL SENTENCE VACATED; REMANDED; MOTIONS TO WITHDRAW GRANTED.

. Defendant has been represented by counsels of the Orleans Indigent Defender Program *228 and the Loyola Law Clinic, both parties have moved to withdraw.