744 So.2d 143 (1999)
STATE of Louisiana
v.
John LONG.
No. 97-KA-2434.
Court of Appeal of Louisiana, Fourth Circuit.
August 25, 1999.
*145 Harry F. Connick, District Attorney, Theresa A. Tambuio, Assistant District Attorney, Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MOON LANDRIEU and Judge MICHAEL E. KIRBY.
ARMSTRONG, Judge.

STATEMENT OF THE CASE
On August 21, 1996, the defendant, John Long, was charged by bill information with distribution of crack cocaine, a violation of *146 La. R.S. 40:967(A)(1), and distribution of marijuana, a violation of La. R.S. 40:966(A)(1).[1] The defendant entered a plea of not guilty at his arraignment on September 4, 1996. On September 19, 1996, the trial court denied the defendant's motion to suppress the evidence and found probable cause. The defendant was found guilty as charged on both counts after a twelve-person jury trial on February 4, 1997. The court adjudicated the defendant a third-felony habitual offender on February 28, 1997. He was sentenced on March 7, 1997 on count one as a habitual offender to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The trial court denied the defendant's motion to reconsider sentence filed that same date, and the defendant filed a notice of appeal. The defendant was sentenced on count two to serve twenty years at hard labor on March 14, 1997, the sentence to run concurrently with the sentence in count one.

FACTS
New Orleans Police Officer Landries Jackson testified that, on July 1, 1996, he and other officers conducted a "buy/bust" narcotics operation, where an undercover officer purchases narcotics from unsuspecting drug dealers who are immediately thereafter arrested by other officers. Officer Jackson was a member of the backup team, parked in the 4500 block of America Street, around the corner from the targeted location, the 4500 block of Dale Street. He said he observed the defendant in the rear of the undercover officer's pickup truck. Officer Jackson said he was normally in audio communication with the undercover officer, but said he did not hear everything that day. The undercover officer notified Officer Jackson and his partner, Det. Othello Thomas, when the transaction was completed, and the officer directed them to the subjects involved in the sale, the defendant and Edgar Martin. He said they got to the defendant and Martin within twenty-five seconds after receiving the go signal. The defendant was walking down Dale Street, and Martin was riding on a bicycle near him. Officer Jackson said the defendant and Martin were the only civilians in that block. Officer Jackson arrested Martin, and recovered four bags of marijuana and some currency from his person.
On cross-examination, Officer Jackson admitted that he erroneously stated in his report of the incident that nine dollars were recovered from the defendant, and that four bags of marijuana were seized from him. He said he found no contraband or money on the defendant. Officer Jackson said this operation was equipped with a video camera, but he did not know whether this particular transaction had been videotaped. He said the serial numbers of currency used to purchase narcotics in these types of operations are usually recorded so that when seized from the suspect it can be used as evidence, but that none of the recorded currency used for these two purchases was recovered from the defendant.
New Orleans Police Officer Tremaine Johnson testified that on July 1, 1996 he participated with other officers in a "buy/ bust" operation, acting as the "spotter," who maintains visual and audio contact with the undercover officer as that officer is approached by street level narcotics dealers. He said the spotter officer also keeps visual contact with the dealer after the transaction is completed. Officer Johnson said he observed Det. Duplantier, the undercover officer, drive to the 4500 block of Dale Street, where he was approached by the defendant. He heard *147 Det. Duplantier and the defendant engage in a conversation about purchasing one piece of crack cocaine. The defendant said he could "take" Det. Duplantier to get the cocaine, and attempted to get into the passenger seat of the officer's pickup truck. Det. Duplantier told him the door handle was broken, and the defendant hopped into the back. The defendant directed Det. Duplantier to drive around the corner to the 4500 block of America Street. There, he met with a second individual, had a brief conversation, and made a hand to hand transaction. The defendant then returned to Det. Duplantier's truck, jumped into the back, leaned over, and handed the officer something. Det. Duplantier drove back around the corner to the 4500 block of Dale Street, whereupon he asked the defendant where he could get some marijuana. The defendant replied affirmatively, pointing to a subject on a bicycle. The defendant went over to the subject, they had a brief conversation, and he handed marijuana to the defendant. The defendant made the sale to Det. Duplantier. After Det. Duplantier left the area, Officer Johnson directed the other officers to take down the defendant and the other subject. Officer Johnson identified a purported audiotape of the conversations between Det. Duplantier and the defendant that day, and the tape was played for the jury. After hearing the tape, Officer Johnson stated that it reflected the same conversation he heard that day over his receiver. After the defendant and the other subject were taken into custody by Officers Jackson and Thomas, Officer Johnson followed Det. Duplantier as he drove back past the arrest scene to verify that the correct subjects had been apprehended. Officer Johnson said the two subjects he saw in police custody were the ones he had observed engaged in drug transactions.
On cross-examination, Officer Johnson testified that he was approximately twenty yards behind Det. Duplantier on Dale Street. He said the defendant was down on one knee when Det. Duplantier pulled up, but that he jumped up and ran to the officer's truck. Officer Johnson said he followed Det. Duplantier's truck when it went around the corner to America Street. Officer Johnson said he could see the residence the defendant went to after leaving the truck to get the cocaine. He said it took no more than thirty seconds from the time the undercover officer left the scene to the time when Officers Jackson and Thomas made the arrests. He said the defendant and Martin stood in the street until Jackson and Thomas made the corner, then the subjects started to move, before being stopped and arrested.
New Orleans Police Officer Othello Thomas testified that, after he and Officer Thomas had apprehended the defendant and Martin, Det. Duplantier positively identified both subjects. On cross-examination, Officer Thomas stated that "buy money," currency which has been photographed or copied, or had the serial numbers recorded, was used in this case. He said none of that currency was recovered from the defendant.
Detective David Duplantier testified that on July 1, 1996 he was working undercover purchasing narcotics. He drove to the 4500 block of Dale Street, where he observed defendant crouched down on a corner. As he approached, the defendant stood up, flagged him down, and asked him what he was looking for. Det. Duplantier said he wanted a twenty-dollar piece of crack cocaine. The defendant tried to get in the front of his truck, whereupon Det. Duplantier advised him to get into the back because the door was broken. The defendant got into the back of the truck and instructed him to drive around the corner. As they pulled off, the defendant stuck his hand into the window, shook the officer's hand, and introduced himself as John. The defendant directed the officer around the corner to the 4500 block of America Street. There, he gave a twenty-dollar bill to the defendant, who went across the street to a house that had *148 ten to twenty subjects in front. He met with another individual, and they walked to the side of the house. The defendant returned, got back into the rear of the truck, and gave Det. Duplantier a piece of crack cocaine through the window. The defendant then instructed the officer to drive back around the corner. Upon returning to the 4500 block of Dale Street, Det. Duplantier asked defendant if he knew where he could get some marijuana. Edgar Martin was approaching on a bicycle. The defendant pointed to him and said, "That's the man right there." The defendant stopped Martin, talked with him, and then came back with a ten-dollar bag of marijuana. Det. Duplantier said all he had was a twenty, and to just give him another ten-dollar bag. He said the defendant went back to Martin and returned with two bags of marijuana. They made the exchange, and Det. Duplantier drove out of the area.
Det. Duplantier said he was wearing an audio microphone so he could be monitored by Officers Johnson, Jackson and Thomas. He also said the vehicle he was driving was equipped with a video camera and recorder, but that he apparently had not turned it on. While driving away from the scene, Det. Duplantier gave a description and a location of the defendant and Martin to other officers. After the two men were apprehended, he made a return pass and confirmed their identification. Det. Duplantier identified the cocaine and marijuana he purchased from the defendant.
On cross-examination Det. Duplantier admitted that after being flagged down, or waived over, by defendant, he might have spoken first, asking defendant, "What do you got?" He said he paid for the marijuana with the second of the twenty-dollar bills he had been provided with, which had been copied at the office. He said he never saw either of the twenty-dollar bills again after giving them to the defendant.
It was stipulated that if New Orleans Police Department Criminalist John Palm were called as a witness he would testify that the "rock" identified by Det. Duplantier tested positive for cocaine, and the green vegetable matter tested positive for marijuana.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the defendant claims the evidence is insufficient to sustain his conviction for distribution of marijuana.
This court set out the standard for reviewing convictions for sufficiency of the evidence in State v. Egana, 97-0318 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the *149 weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
97-0318 at pp. 5-6, 703 So.2d at 227-28.
In this assignment of error, appellate counsel, who was not the defendant's trial counsel, first argues that the evidence was insufficient to support defendant's conviction for distribution of marijuana based on the erroneous assumption that the marijuana was transferred to Det. Duplantier by Edgar Martin, not defendant. In appellate counsel's statement of facts she asserts that Martin sold the marijuana to Det. Duplantier. She begins her argument by stating that "delivery and distribution requires more than pointing to a possible seller." Appellate counsel later states: "Martin completed his distribution of marijuana by making the deal with the officer, independent of any participation by the defendant other than being pointed out as a seller."
La. R.S. 40:966(A) makes it unlawful for any person to distribute a Schedule I controlled dangerous substance. La. R.S. 40:964(C) defines marijuana as a Schedule I controlled dangerous substance. La. R.S. 40:961(14) defines "distribute," in part, as meaning "to deliver ... by physical delivery ...." La. R.S. 40:961(10) defines "deliver" as meaning the "transfer of a controlled dangerous substance whether or not there exists an agency relationship." In addition, jurisprudence has defined "deliver" as transferring possession or control. State v. Martin, 310 So.2d 544, 546 (La. 1975); State v. Parker, 627 So.2d 210, 212 (La.App. 4 Cir.1993), writ denied, 93-2956 (La.3/11/94), 634 So.2d 403.
Det. Duplantier testified as follows regarding the defendant's actions after he sold the officer cocaine:
He then instructed me to drive back to where I picked him up at [sic] which I did. Upon reaching that location he got out of the truck, he went to shake my hand and I asked if there was anything I could twist this up with for instance marijuana. At that time the subject was [sic] later identified as Edgar Morris. He was approaching us on a bike in the street in the 4500 block of Dale, and he pointed to him and said, "That's the man right there." He stopped the guy and talked with him then approached me and brought back a small bag of marijuana and said, "This is a dime." I said, "Well, all I have is a twenty." I said, "Well, give me another dime then." He went back and came back with two bags and we made the exchange and I drove out of the area.
Officer Johnson, who watched both sales, testified as to the marijuana sale:
Detective Duplantier then asked him, "Where can I get something to go with this," meaning the marijuana. He said, "Okay, here's the man right here." Then the defendant pointed to another subject that was riding a bicycle. He went over to the subject, they had a brief conversation, he handed the marijuana back to the defendant, he made the sale, handed it to the detective and left the area. After the detective left the area I directed the take down scene to the defendant and the other subject that he had gotten the marijuana from.
*150 While Officer Johnson's testimony might be somewhat vague, Det. Duplantier clearly testified that defendant stopped Martin, defendant talked with Martin, and then defendant approached Det. Duplantier, bringing a small bag of marijuana to show the officer. It was defendant who showed the marijuana to Det. Duplantier, telling him it was a ten-dollar bag. When Det. Duplantier informed defendant all he had was a twenty-dollar bill, and told him to just get another ten-dollar bag, defendant "went back" to Martin and "came back" from Martin with two bags of marijuana, and defendant and Det. Duplantier made the exchange. When arrested, Martin had four bags of marijuana on his person. Thus, reason dictates that if it had been Martin who showed Det. Duplantier the ten-dollar bag, Martin would not have had to go "back" anywhere to get another ten-dollar bag, or "come back" from getting it to give it to the officer. Martin would have had the other ten-dollar bag on his person, just as he had the other bags on his person when arrested and searched. The only logical interpretation of Det. Duplantier's testimony is that the defendant made the actual sale, just as he had done with the cocaine.
Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant distributed-delivered by physically transferring possession-marijuana to Det. Duplantier. Therefore, there is no merit to defendant's argument that the evidence was insufficient to convict him of distribution of marijuana on the ground that all he did was to point Martin out to Det. Duplantier as someone from whom the officer could purchase marijuana.
The defendant next argues that the evidence was insufficient to sustain his conviction because he was entrapped.
The defense of entrapment was discussed at length by the Supreme Court in State v. Brand, 520 So.2d 114 (La.1988), as follows:
Entrapment is a defense which arises when a law enforcement official or an undercover agent acting in cooperation with such an official, for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. The defense is designed to deter the police from implanting criminal ideas in innocent minds and thereby promoting crimes which would not otherwise have been committed. Obviously, law enforcement agents should not persuade citizens to commit crimes, and the defense is recognized to prevent shocking police inducement of the perpetration of a crime.
Entrapment is an affirmative defense. Thus, the burden was on defendant to prove entrapment by a preponderance of the evidence. The question whether the government agent implanted the criminal idea in the mind of an innocent person to induce the commission of a crime that would not otherwise be committed is one for the jury.
The entrapment defense will not be recognized when the law enforcement official merely furnishes the accused with an opportunity to commit a crime to which he is predisposed. In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. Thus, the focus in determining an entrapment defense is on the conduct and predisposition of the defendant, as well as the conduct of the government agent. (Citations omitted).
520 So.2d at 117.
Contentions of entrapment are reviewed on appeal pursuant to the sufficiency of evidence standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Hardy, 98-25, p. 9 (La.App. 5th Cir. 5/13/98), 715 So.2d 466, 471. A reviewing court must *151 first determine whether the defendant proved by a preponderance of the evidence that he was induced to commit the crime. Id. If the court finds the defendant carried his burden of proof, the next inquiry is whether the State adduced evidence of the defendant's predisposition to commit the crimes such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant's predisposition to commit the crime, rather than the State's inducement which caused the defendant's conduct. State v. Petta, 98-745 (La.App. 5 Cir. 2/10/99), 729 So.2d 29, 32.
The entrapment defense is composed of two elements: (1) an inducement by a state agent to commit an offense; and (2) lack of predisposition to commit the offense on the part of the defendant. State v. Francis, 98 811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1238; State v. Hardy, supra.
In the instant case, Det. Duplantier testified that defendant was in a crouched down position and stood up to flag him down as he slowly drove down Dale Street. While Det. Duplantier admitted he spoke to defendant first, asking him "What do you got?", it was defendant who waived Det. Duplantier to a stop and approached him. Defendant did not ask Det. Duplantier for anything, and did nothing to indicate that he waived the officer over for any reason other than to see if Det. Duplantier wanted anything from him. Defendant eagerly obtained cocaine for Det. Duplantier, shaking his hand and introducing himself to the officer. Similarly, when Det. Duplantier asked defendant if he knew where he could get any marijuana, defendant, without hesitation, obtained marijuana from Martin and sold it to the officer. Defendant has not proved by a preponderance of the evidence that he was induced to obtain the marijuana for Det. Duplantier. However, even assuming there was some inducement, the evidence clearly shows that defendant was predisposed to commit both crimes. Thus, there was no entrapment.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant claims his sentence as a habitual offender is unconstitutionally excessive: (1) because La. R.S. 15:529.1(A)(1)(b)(ii) requires a life sentence for addicted drug offenders; and (2) because of the circumstances surrounding defendant's particular case.
The defendant was sentenced to life imprisonment pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), which provides that:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The defendant received an enhanced sentence pursuant to La. R.S. 15:529.1(A)(1)(b)(ii) for a third felony, the conviction for distribution of cocaine in the instant case. Defendant's two prior convictions were for distribution of false drugs, and possession of cocaine.
The defendant argues that this statutory provision is unconstitutional in that it punishes drug addiction, i.e., "defendants who, like John Long, are addicted to cocaine and all other controlled substances other than marijuana, in violation of the Eighth Amendment to the United States Constitution and the Louisiana Constitution of 1974, Art. 1, Section 20." The defendant admits that the Habitual Offender Law does not charge a new crime, but merely seeks the enhancement of a given punishment provision. He further admits that the statute, in its entirety, does not punish *152 status or on its face impose cruel and unusual punishment. The defendant further admits the presumption of constitutionality applicable to La. R.S. 15:529.1(A)(1)(b)(ii). However, defendant argues that, "as applied to drug addicts whose addiction compels recidivism, ... R.S. 15:529.1(A)(1)(b)(ii), punishes their condition or status ....," and is therefore unconstitutional.
The defendant's argument fails because the record is devoid of any evidence that defendant is an addicted drug offender. While one of the defendant's prior convictions was for possession of cocaine, another was for distribution of false drugs. His third felony conviction was for distribution of cocaine, and he was convicted for that offense along with being convicted for distribution of marijuana. Thus, of the defendant's four drug convictions reflected by the record, three were for distribution. While the defendant avers that his conviction for small-time drug distribution offenses goes hand in hand with his drug addiction and is evidence of that addiction, the record furnishes no basis for such a conclusion.
The defendant next argues that the sentence is unconstitutionally excessive as applied to him. Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, (La. 3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. A defendant must clearly and convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive. Johnson, 97-1906 at p. 11, 709 So.2d at 678.
In a recent decision by this court, State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, this court vacated the life sentence of a fourth felony habitual offender sentenced pursuant to La. R.S. 15:529.1(A)(1)(c)(ii)-essentially the same as the provision at issue in the instant case, except it applies to fourth felony offenses-after his conviction for distribution of one rock of crack cocaine. This court found that, on the facts pertaining to that defendant, it was "unable to conclude that this life sentence is not excessive under the constitutional standard." 97-1553 at p. 11, 723 So.2d at 1020.
The defendant in Burns was observed by police selling one rock of crack cocaine to a third person. When arrested, the defendant was in possession of two more rocks and fifty-seven dollars. Defendant testified at trial that he was addicted to cocaine. Noting that two of defendant's prior convictions were for possession of cocaine, this court concluded, "thus it is safe to assume he deals to support his habit," 97-1553 at p. 9, 723 So.2d at 1019. The defendant was twenty-five years old-this court felt that the defendant was "young enough to be rehabilitated," and noted that a sentence less than life would "afford him the opportunity to partake in self-improvement classes while incarcerated and the possibility of a productive future." Id. The defendant's father testified at trial, stating that the defendant was well liked in the community and would go out of his way to help anyone. Though recognizing that the fact that none of the defendant's felonies were non-violent alone *153 was insufficient to override the legislatively designated sentences of the Habitual Offender Law, this court cited Johnson, supra, for the proposition that this fact should not be discounted. This court also noted that there were no allegations that the defendant ever possessed a dangerous weapon. Finally, the court noted that the defendant had difficulties with memory regarding time and place, attributing the problems to a previous gunshot wound to the head. The court noted that this "surely must affect [the defendant's] ability to function in the same manner as someone who has not been shot in the head." 97-1553 at p. 10, 723 So.2d at 1020. The court also cited two economic impact considerations-that the defendant would never be a productive taxpayer in prison, and that life imprisonment imposes an undue burden on taxpayers of the state who must feed, house, and clothe the defendant for life, and provide geriatric care in later years.
In State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, this court declined to extend Burns to a case where there was no evidence that the defendant was driven by his addiction to sell drugs to support his drug habit, and the record was devoid of any testimony suggesting that the defendant might possess any redeeming virtues. This court stated:
Where a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness.
97-2060 at p. 13, 730 So.2d at 1027.
In the instant case, the defendant turned thirty years old on the day he was arrested for the instant offenses. He was convicted of selling one twenty-dollar rock of crack cocaine and two ten-dollar bags of marijuana to an undercover police officer. The defendant either sold the drugs for other persons, or other persons held his drugs and money for him. While the defendant had one prior conviction for possession of cocaine, as previously discussed, as in Finch, the record contains nothing from which it can be concluded that defendant was an addict selling drugs to support his habit. The defendant did not testify at trial, and did not make any statements prior to sentencing. No one testified on the defendant's behalf at trial or at his sentencing. There apparently was no presentence investigation performed. As in Finch, the record is devoid of any testimony suggesting what, if any, redeeming virtues defendant might possess.
Under these circumstances, it cannot be said that the defendant has presented substantial evidence to show by clear and convincing evidence that his sentence is unconstitutionally excessive as required by Johnson, supra.
There is no merit to this assignment of error.
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Edgar Martin was charged in the same bill of information as to count two only, distribution of marijuana, and was also charged in a separate bill of information with possession with intent to distribute marijuana, arising out of the same incident. Martin pleaded guilty as charged on December 3, 1996, received suspended sentences of ten years at hard labor on each count, and was placed on three years active probation with special conditions.