765 So.2d 1120 (2000)
STATE of Louisiana
v.
Charles P. ALFORD.
No. 99-KA-0299.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 2000.
*1122 Harry F. Connick, District Attorney, Jane L. Beebe, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Menette W. Burns, Louisiana Appellate Project, Covington, LA, Counsel for Defendant/Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER and Judge PHILIP C. CIACCIO, Pro Tem.)
WALTZER, Judge.

STATEMENT OF CASE
On 8 July 1996, the defendant, Charles Alford, was charged by bill of information with possession of cocaine, a violation of La. R.S. 40:967(F)(1). The bill of information charged that on 23 February 1996, the defendant, along with several co-defendants, unlawfully possessed twenty-eight to two hundred grams of cocaine. The bill was subsequently amended to charge that on that same date, the defendant also unlawfully possessed with the intent to distribute marijuana. Listed as co-defendants for the cocaine charge were Marquis Davidson, Karl Randolph, and Tony Williams. Listed as a co-defendant for the marijuana charge was Marquis Davidson.
On 17 July 1996, the defendant entered a plea of not guilty in response to the initial bill of information, and on 16 September 1996, the defendant entered a plea of not guilty to the amended bill of information. Following a hearing on 16 September 1996, the trial court found probable cause and denied motions to suppress evidence. Prior to trial, the co-defendant Karl Randolph died, and the State entered a nolle prosequi as to that defendant on 16 September 1996. On 21 May 1997, co-defendant, Marquis Davidson, pled guilty to the charges filed against him. On 22 May 1997, a twelve-person jury found the defendant guilty of attempted possession of twenty-eight to two hundred grams of cocaine and simple possession of marijuana.[1] The trial court ordered a pre-sentence investigation.
On 4 November 1997, the state filed a multiple bill charging the defendant with being a third felony offender. Following a hearing that same day, the trial court found the defendant to be a third felony offender and sentenced him to life in prison without benefit of probation, parole or suspension of sentence as to the cocaine charge. The court also sentenced the defendant to serve a concurrent six months sentence in parish prison on the marijuana charge. The defendant's motion to reconsider sentence was denied, and his motion for appeal was granted. The record was lodged with this court on 5 February 1999. On 26 February 1999, the defendant filed a motion to supplement the record with several documents, including the exhibits introduced at the multiple bill hearing. On 24 March 1999, this court received a certificate from the Criminal District Court's clerk's office stating that the exhibits requested could not be located in the property room or the record. On 13 October 1999, this court issued an order directing that briefs be filed in the case. Defendant filed a brief on 14 December 1999, and the State filed its brief on 19 January 2000.

STATEMENT OF FACT
On 22 February 1996, New Orleans Police Detective Kevin Honore was working as an undercover officer in a drug investigation in the CBD. At the time of the investigation, Detective Honore was assigned to the Narcotics Division and worked with the Drug Enforcement Administration (DEA) task force. Detective Honore's job assignment called for him to *1123 attempt to purchase crack cocaine from a subject named Charles who worked at the APCOA parking lot located in the CBD near Tchoupitoulas and Poydras Streets.
Detective Honore had never met Charles and did not know his last name. On 22 February 1996, Detective Honore arrived at the APCOA parking lot sometimes after lunchtime. He was wearing a monitoring device which was being monitored by Skip Sewell, a special agent with the DEA, and Chad Scott, a criminal investigator for the DEA Task Force.
Detective Honore arrived at the parking lot and talked to the defendant about purchasing five ounces of crack cocaine for forty seven hundred dollars. The defendant told the detective that he did not have the cocaine on hand, but he indicated that he could get someone to bring it to him. While the defendant was negotiating with Detective Honore, Marquis Davidson, the defendant's co-worker, was placing the telephone calls for the defendant. Detective Honore waited for a short period of time then told the defendant he would return later. The defendant assured him that it would not take long to procure the drugs. After riding around the neighborhood, Detective Honore returned to the APCOA parking lot. The defendant gave several excuses to explain why the cocaine had not yet been delivered. The defendant kept talking to the undercover detective during the long wait; several times the defendant sat in the car talking to the detective while they waited. During the wait, the defendant offered the detective some marijuana. The detective refused. After waiting until around 3:30 p.m. the detective left. The defendant told the detective to return the next day; he indicated that he was sure that he could get the cocaine for him. Shortly after Detective Honore left the scene Agent Sewell and Mr. Scott observed a black Camaro arriving at the parking lot. Carl Randolph exited the vehicle and spoke briefly with the defendant and Marquis Davidson for about five minutes and then left the parking lot.
Detective Honore returned to the APCOA parking lot the next day just before lunchtime. When he arrived, the defendant still did not have the cocaine on the parking lot. However, he assured Detective Honore that all he had to do was place a phone call and the drugs would be delivered. This time Detective Honore waited a little more than an hour for the cocaine to arrive. During the wait, the defendant again offered the detective some marijuana. Again the detective refused. The defendant never actually showed Detective Honore the marijuana; rather, he indicated that the marijuana was located in the shed.
Finally, a black Camaro pulled into the parking lot, and the defendant indicated to the detective that the cocaine had arrived. The men were standing by the parking shed when the Camaro being driven by Carl Randolph arrived. Tony Williams was sitting in the passenger seat. Marquis Davidson walked over to the Camaro and talked with Carl and Tony. Carl Randolph handed the cocaine Marquis Davidson. Marquis Davidson placed it under his shirt and walked back to Detective Honore. He showed Detective Honore the cocaine, and the detective told him that he would go get the money out of his car. Detective Honore walked back to his vehicle and gave the arrest signal. At that time the other agents involved in the investigation moved in to assist with the arrests. Detective Honore identified several bags of cocaine as the cocaine that Marquis Davidson showed him.
Detective Chris Ortiz of the City of Kenner Police Department was assigned to the DEA Task Force on 23 February 1996, the day the investigation culminated. Detective Ortiz was assigned to the arrest and surveillance team and was a member of the take-down team. When he arrived on the scene the two people in the black Camaro had already been arrested. Officer Ortiz proceeded to the attendant's *1124 shed of the parking lot and recovered a clear plastic bag containing an ounce and a half of marijuana. He gave the marijuana to Agent Sewell. Nobody was in the shed when Officer Ortiz walked in and recovered the marijuana; however, the defendant was standing outside the shed with another agent. He had already been taken into custody.
Marquis Davidson testified that he had pled guilty as charged to the possession of cocaine and possession with intent to distribute marijuana charges the day prior to trial. He indicated that no offers or promises had been made to him. Mr. Davidson stated that he and the defendant worked together at the APCOA parking lot. Mr. Davidson and the co-defendant, Tony Williams, were acquaintances from high school. Mr. Davidson testified that on 22 February 1996, his friend, Carl Randolph, came to the parking lot for a few minutes to discuss a drug transaction. He could not recall the defendant being present at the time. However, on 23 February 1996, Carl came to the parking lot to deliver a package containing cocaine to the defendant. He gave the cocaine to Mr. Davidson, and Mr. Davidson gave the package to the defendant.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1
In the first assignment of error the defendant argues that the jury erred in finding him guilty because the evidence demonstrated by a preponderance of the evidence that he was induced into attempting to possess the cocaine. He also argues that the State failed to prove that he had a predisposition to commit the crime.
The defendant argues that the evidence demonstrates that Detective Honore approached him and persuaded him to obtain a large quantity of cocaine to sell him. The defendant argues that he had no cocaine when approached by Detective Honore. Rather, he argues that it was only after Detective Honore offered him forty seven hundred dollars that he was induced to attempt to locate some cocaine. He argues the State presented no evidence to show that he already had the predisposition to commit the crime of attempted possession of cocaine. Rather, he argues that this is nothing more than a case of entrapment.
The defense of entrapment was discussed at length by the Supreme Court in State v. Brand, 520 So.2d 114 (La.1988), as follows:
Entrapment is a defense which arises when a law enforcement official or an undercover agent acting in cooperation with such an official, for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. The defense is designed to deter the police from implanting criminal ideas in innocent minds and thereby promoting crimes which would not otherwise have been committed. Obviously, law enforcement agents should not persuade citizens to commit crimes, and the defense is recognized to prevent shocking police inducement of the perpetration of a crime.
Entrapment is an affirmative defense. Thus, the burden was on defendant to prove entrapment by a preponderance of the evidence. The question whether the government agent implanted the criminal idea in the mind of an innocent person to induce the commission of a crime that would not otherwise be committed is one for the jury.
The entrapment defense will not be recognized when the law enforcement official merely furnishes the accused with an opportunity to commit a crime to which he is predisposed. In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. Thus, the focus in determining an entrapment defense is on the conduct and *1125 predisposition of the defendant, as well as the conduct of the government agent. (Citations omitted).
520 So.2d at 117.
Contentions of entrapment are reviewed on appeal pursuant to the sufficiency of evidence standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Also see, State v. Long, 97-2434 (La.App. 4 Cir. 8/25/99), 744 So.2d 143, writ denied, 1999-2780 (La.3/17/2000), 756 So.2d 1140; State v. Hardy, 98-25, p. 9 (La.App. 5 Cir. 5/13/98), 715 So.2d 466, 471.
The entrapment defense is composed of two elements: (1) an inducement by a state agent to commit an offense; and (2) lack of a predisposition to commit the offense on the part of the defendant. State v. Francis, 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1238, writ denied, 99-0671 (La.6/25/99), 746 So.2d 597. Thus, when reviewing a claim for entrapment a reviewing court must first determine whether the defendant proved by a preponderance of the evidence that he was induced to commit the crime. State v. Long, 97-2434, p. 11, 744 So.2d at 150-151. The question of whether the government agent induced an innocent person to commit a crime that he would not otherwise commit is for the jury to decide. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).
In the instant case, Detective Honore specifically approached the defendant at his place of business and asked if he would sell him five ounces of crack cocaine for forty-seven hundred dollars. Arguably the forty-seven hundred dollars could be considered a strong incentive for some people to engage in criminal activity. Thus, it may be that Detective Honore induced the defendant to attempt to find cocaine to sell him. However, even if this court assumes arguendo that Detective Honore induced the defendant to commit the crime by offering him a large amount of money for the cocaine, the next inquiry is whether the State adduced evidence of the defendant's predisposition to commit the crimes such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant's predisposition to commit the crime, rather than the State's inducement which caused the defendant's conduct. State v. Long, 97-2434, p. 11, 744 So.2d at 151 citing State v. Petta, 98-745 (La.App. 5 Cir. 2/10/99), 729 So.2d 29,32, writ denied, 99-0692 (La.9/3/99), 747 So.2d 533, cert. denied, ___ U.S. ___, 120 S.Ct. 956, 145 L.Ed.2d 830 (2000). In cases wherein the Government has induced an individual to break the law and the defense of entrapment is at issue, the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents. Jacobson v. United States, 503 U.S. 540, 548-549, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992).
While Detective Honore admittedly made the request to the defendant, the evidence indicates the defendant quickly assured the detective that he could obtain the cocaine being requested. Unable to secure the cocaine on the first day, the defendant asked the detective to come back the next day. Further, on both days the defendant offered the undercover detective marijuana while he was awaiting the delivery of the cocaine. Further, he took pains to encourage the detective to wait on the delivery. From these facts, a reasonable factfinder could have concluded, beyond a reasonable doubt, that the appellant was predisposed to commit the crime. Thus, there was no entrapment. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In the second assignment of error the defendant argues that the evidence presented by the state was insufficient to prove beyond a reasonable doubt that he was guilty of possession of marijuana.
The defendant argues that the marijuana was not seized from him. Rather, it was found in the shed, and no evidence was introduced to show that he had actual *1126 possession of the marijuana at any time. Accordingly, he argues the evidence was insufficient to prove that he was guilty of possessing the marijuana.
To support a conviction for possession of either cocaine or marijuana, the State must prove that the defendant was in possession of the contraband and that he knowingly possessed it. La. R.S. 40:966. However, it is not necessary that the State prove that the defendant had actual physical possession of the drugs; proof of constructive possession is sufficient to support a conviction. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Harris, 585 So.2d 649 (La.App. 4 Cir. 1991); State v. Jamison, 565 So.2d 1080 (La.App. 4 Cir.1990). Neither the mere presence of the defendant in an area where drugs have been found nor the mere fact that he knows the person in actual possession is sufficient to prove constructive possession. State v. Bell, 566 So.2d 959 (La.1990); State v. Walker, 514 So.2d 602 (La.App. 4th Cir.1987). Nevertheless, a person found in the area of the contraband is considered in constructive possession if it is subject to his dominion and control. State v. Trahan, supra. The defendant can have constructive possession if he jointly possesses the drug with a companion and if he willfully and knowingly shares with his companion the right to control of the drugs. State v. Walker, 514 So.2d 602 (La.App. 4th Cir.1987).
There are several factors to be considered in determining whether the defendant exercised dominion and control so as to constitute constructive possession. Those factors include: the defendant's knowledge that illegal drugs were in the area; the defendant's relationship with the person in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use; the defendant's proximity to the drugs; and any evidence that the residence was frequented by drug users. State v. Chambers, 563 So.2d 579 (La.App. 4th Cir.1990); State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984), writ denied 450 So.2d 644 (La.1984).
The record in this case supports a finding that the State proved beyond a reasonable doubt that the defendant had constructive possession of the marijuana. Although the defendant was not in the shed at the time that the marijuana was seized, the evidence was sufficient to establish that the defendant and Marquis Davidson exercised joint dominion and control over the marijuana. The defendant offered the detective marijuana several times while awaiting the delivery of the cocaine. The defendant specifically told the detective that the marijuana was in the shed. Obviously he had dominion or control over the marijuana or he could not have convincingly offered it to the officer. Additionally the record supports a finding that at various points during the negotiations the defendant, as well as Marquis Davidson, was in the vicinity of the shed. From the evidence presented at trial, the jury could have reasonably concluded that defendant was aware of the marijuana found in the shed. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 3
Next the defendant argues that this case must be remanded for a new multiple bill hearing because the exhibits introduced at the multiple bill hearing are missing from the record. The defendant argues that he cannot assert a defense that the exhibits are insufficient to prove prior convictions because the exhibits admitted at the multiple bill hearing cannot be located.
Ordinarily, in cases wherein it is impossible to ascertain if the State met its burden of proof at the multiple bill hearing because of missing exhibits, the defendant's adjudication and sentence under the multiple offender statute will be vacated. La. Const. art. I, § 19 (1974); State v. McGhee, 96-1656 (La.App. 4 Cir. 3/24/99), 739 So.2d 222; State v. Ford, 338 So.2d 107 (La.1976).
*1127 However, in the instant case it does not appear that the defendant can challenge the multiple bill adjudication because he failed to file a written response and failed to orally object to the multiple bill. Although counsel asked two perfunctory questions about the number of points for qualification found on one of the exhibits, counsel did not specifically lodge any objections to the evidence submitted to establish identity. Further, when questioned about any objections to the Boykinizations for the defendant's two previous convictions at the multiple bill hearing, counsel replied that he had no objections.
In State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, this Court held that the failure to file a written response to the multiple bill as required by La. R.S. 15:529.1(D)(1)(b) precluded appellate review of the defendant's claim that the documentary evidence was not sufficient to support prior convictions set forth in the multiple bill. In State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14 this court found that an oral object would be sufficient to preserve issues related to the multiple bill adjudication for appellate review. However, in the instant case wherein neither a written nor an oral objection was made, issues related to the multiple bill adjudication have not been preserved.

ASSIGNMENT OF ERROR NUMBER 4
In the final assignment of error the defendant argues that the trial court imposed an unconstitutionally excessive sentence at the multiple offender adjudication.
The defendant concedes that the defendant's sentence is within the statutory limits. However, he argues that a life sentence for the crimes he committed amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. He notes that none of his prior convictions were for crimes of violence. Further, he argues he has generally maintained employment, and that he is HIV positive and has developed AIDS.
The defendant was sentenced to life imprisonment pursuant to La. R.S. 15:529.1 A(1)(b)(ii), which provides that:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Defendant received an enhanced sentence pursuant to La. R.S. 15:529.1 A(1)(b)(ii) for a third felony, the conviction for attempted possession of cocaine in an amount more than 28 grams but less than 200 grams in the instant case. Defendant's two prior convictions were for possession of stolen property worth over five hundred dollars and possession with intent to distribute cocaine.
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. *1128 State v. Francis, 96-2389, p. 7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. A defendant must clearly and convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive. Johnson, 97-1906 at p. 11, 709 So.2d at 678.
In the instant case, the defendant was thirty years old on the day he was arrested for the instant offense. He was convicted of attempting to possess between 28 and 200 grams of cocaine. The defendant was apparently attempting to earn money by acting as a middleman for the sale of large amounts of cocaine. Prior to sentencing the defendant, the trial court had the benefit of a pre-sentence investigation report dated 30 June 1997. The report recounted numerous arrests and convictions for the defendant; however it noted that the defendant has no arrests for crimes against the person. The report further noted that the defendant has been under parole supervision since his earlier release in April of 1993. The defendant allegedly maintained employment, but he did not report to the district office as required. Further, the defendant was in serious arrearage in supervision fees. The report noted that the defendant has been HIV positive for the past four years and had developed AIDS. The defendant reported not feeling well. The defendant's mother was very concerned about his health, and stated that she would not like to see him die in prison. However, the report also noted that the defendant has been involved in drug trafficking for quite a number of years, and had previously served a five-year sentence because of his drug trafficking. The report noted that the defendant was a third offender and was not eligible for the intensive/incarceration program. Probation was not recommended.
The defendant did not testify at trial, and did not make any statements prior to sentencing. No one testified on defendant's behalf at trial or at his sentencing.
Under these circumstances, it cannot be said that defendant has presented substantial evidence to show by clear and convincing evidence that his sentence is unconstitutionally excessive as required by Johnson, supra.
CONCLUSION.
ACCORDINGLY, we affirm the defendant's conviction and sentence.
AFFIRMED.
BYRNES, J., CONCURS WITH REASONS.
BYRNES, J., concurring with reasons.
I respectfully concur.
I agree with the well reasoned opinion of the majority in its entirety. I concur only for the purpose of citing additional authorities in support of the majority's conclusion that the defendant's sentence was not constitutionally excessive.
A reviewing court may set a trial court's sentence aside only if it is clearly excessive, rather than because another sentence might have been appropriate. State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. Johnson, 97-1906 at p. 6, 709 So.2d at 676.
The majority notes that the defendant has no arrests for crimes against the person. While a defendant's record of nonviolent offenses may play a role in the sentencing judge's determination that a minimum sentence is too long, it cannot be the only or even the major reason for declaring such sentence excessive. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. "[A] lack of prior violent crimes has already been factored into the minimum sentence under the Habitual Offender Law." Johnson, 709 So.2d at 677. Thus, it is clear that the nonviolent nature of current or of past crimes cannot rebut the *1129 presumption that the mandatory minimum sentence under the Habitual Offender Law is constitutional.
It is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Johnson, 97-1906 at p. 8, 709 So.2d at 677.
The majority notes that the defendant did not testify at trial, and did not make any statements prior to sentencing. Nor did anyone testify on defendant's behalf at trial or at his sentencing. Therefore, we find guidance in State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, and State v. Long, 97-2434 (La.App. 4 Cir.8/25/99), 744 So.2d 143, wherein this Court upheld life sentences where the record was devoid of evidence that the defendant sold drugs to support a drug habit, and there was no testimony suggesting the defendants possessed any redeeming virtues.
The defendant must clearly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, p. 8, 709 So.2d at 677. The record is devoid of any evidence that the defendant's case is exceptional. Per force, in the absence of any evidence we must conclude that the defendant has failed to meet the standard required of clear and convincing evidence. There is no merit to defendant's constitutional argument.
NOTES
[1] The jury found the co-defendant, Tony Williams, not guilty.