715 So.2d 466 (1998)
STATE of Louisiana
v.
Lesley A. HARDY.
No. 98-KA-25.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1998.
Order Amending Sentence on Grant of Rehearing July 17, 1998.
*468 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Ellen S. Fantaci, Hans Sinha, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Katherine M. Franks, Louisiana Appellate Project, Baton Rouge, for Defendant/Appellant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
The defendant, Lesley A. Hardy, was charged by bill of information with distribution of cocaine, a violation of LSA-R.S. 40:967 A. Prior to the trial in this matter, the defendant filed a motion to appoint a sanity commission, which was granted by the trial court. After a sanity hearing, the trial judge found the defendant competent to stand trial.
On the morning of trial the defendant raised a motion to quash the information, based upon alleged government misconduct, which was denied by the trial court. Also on that date the trial court denied the defendant's motions to suppress the confession, identification and evidence.
The defendant went to trial by jury and was found guilty as charged. Pursuant to a multiple bill, the defendant was sentenced as a second offender to twenty-five years at hard labor without the benefit of probation, parole or suspension of sentence. This appeal followed.

FACTS
The following facts are developed from trial testimony.
Detective Jenell Godfrey, of the Kenner Police Department, testified that in August of 1996, the department was investigating drug activity at 4012 Tulane Street in Kenner. She testified that the investigation was based upon citizen complaints.
On August 8, 1996, a confidential informant (identified at trial as "Kenny") told the Kenner *469 Police Department that he knew that the defendant, Lesley Hardy, was selling drugs from the 4012 Tulane Street house. The confidential informant, Kenny, in the presence of Detective Godfrey and Detective Chris Oritz, called the defendant from a police cell phone. During this phone call, Kenny made no threats to the defendant. Based on this cell phone conversation, Detectives Godfrey and Oritz, acting undercover, accompanied Kenny to the defendant's home.
When they arrived at the 4012 Tulane address, the defendant told them to come in and wait in the kitchen. After waiting for about 5 minutes, the detectives walked out of the house, telling the defendant that the deal was off. The defendant followed the detectives out of the house, and up to their car, saying, "Wait a minute. I know somebody else we can get the dope from, we just have to take a ride." The detectives got in the car with Kenny driving, and the defendant in the front seat. The defendant directed Kenny to drive them to an address at 33rd and Idaho Streets. When they arrived at the 33rd and Idaho address, Detective Oritz gave the defendant $100. The defendant went upstairs by herself and came down with 5 rocks of crack cocaine, which she handed to Detective Godfrey. At that time, the defendant asked the detective if she could break a small piece off of the rock for herself. The detective responded that she couldn't and she told defendant that she'd take care of her "next time".
Kenny and the two officers then drove the defendant home, and the defendant gave Detective Oritz her phone number and told him to get in touch with her directly if they needed anything else.
Detective Godfrey told the jury that during the course of this transaction, the defendant did not appear nervous. Furthermore, no threats were made at any time to the defendant. Detective Godfrey also told the jury that Kenny was paid by the Kenner Police Department.
Detective Chris Oritz corroborated Detective Godfrey's testimony, stating that he overheard Kenny's conversation with the defendant and that the defendant was never threatened or coerced.
Daniel Waguespack of the Jefferson Parish crime lab testified that the substance given to Detective Godfrey by the defendant tested positive as crack cocaine.
As part of the defendant's case, the defense called Mr. Michael Ford who testified that he had known the defendant his whole life. He told the jury that he was at the defendant's house almost every day. He testified that, although he was aware the defendant smoked crack, he had never seen the defendant sell crack. He told the jury that "Kenny" used to go over and "smoke dope" with the defendant, but that Kenny would always bring the dope. He also told the jury that, although the defendant smoked crack, she never bought crack, because people were always bringing it to her. He testified that he was not at the defendant's house in August of 1996, because he had been in jail.
In addition, Ford testified that he never attempted to be a confidential informant for the Kenner Police Department. However, on rebuttal, Detective Godfrey testified that on April 18, 1997, Mr. Michael Ford approached her about becoming a confidential informant. Mr. Ford named the defendant as a person he could "turn in." Detective Godfrey declined Mr. Ford's offer.
The defendant testified on her own behalf. She told the jury that although she used to smoke crack cocaine, she never sold cocaine. She claimed that cocaine was always provided for her use. She also told the jury that she had known Kenny for three years and that he routinely came over to her house to smoke crack with her.
The defendant testified that Kenny called her on one occasion and asked her to get him some cocaine. She told Kenny she couldn't and he said she "better, I better find a way to get him some; he was coming by my house with some people, and they just got off from offshore and they wanted crack cocaine." She was scared, so when Kenny and two other people (the detectives) arrived at her house she took them "by a girlfriend's house" to get some crack cocaine. She testified that the threat consisted of Kenny telling her "you better get me crack cocaine." *470 She later testified that Kenny was "screaming and hollering" on the phone.
The defendant also testified that on the day of the buy she knew that Officer Godfrey was an undercover police officer. Defendant testified that she knew that the substance she procured for the undercover officers was not crack cocaine, because she bit a piece off one of the rocks when she first purchased them, before returning to the car and giving them to Officer Godfrey. She also stated that the rocks of cocaine introduced into evidence at trial were not the same as the ones she gave to Detective Godfrey. This was in contradiction to defense counsel's stipulation during the testimony of Officer Godfrey that the rocks introduced into evidence were the same ones that defendant gave to Officer Godfrey. The defendant also testified that she never gave the detectives her phone number.
In addition, the defendant testified that she was suffering from paranoid schizophrenia and manic depression. She was previously convicted of possessing 104 packets of LSD, but that the LSD was not hers. Rather, she claimed that she found it in a shopping center.

ANALYSIS
In her first allegation of error, the defendant argues that misconduct of the confidential informant acting as an agent of the state, and misconduct of the officers in not monitoring the actions of the confidential informant, warranted quashing the bill of information. The defendant also argues that the officers were engaging in "sentence entrapment" by trying to lure the defendant into dealing drugs in order to enhance the offenses with which she could be charged if arrested.
In her second assignment of error, defendant argues that the evidence was insufficient to sustain her conviction for distribution of cocaine because the defense successfully proved an entrapment defense.
The courts have recognized a distinction between the entrapment defense and government misconduct:
In certain prescribed instances the Government is estopped from bringing a prosecution because of [its] own misconduct. The involvement of the government agents in a crime will bar prosecution if the methods used violate fundamental fairness and due process so as to be characterized as too over reaching ...
There is a distinction between `governmental misconduct' and `entrapment' and although the two concepts are similar there exists a major distinguishing characteristic. The defense of entrapment, like the defense of governmental misconduct, is a court created limitation on government activities. Both defenses arise from a strong policy consideration which necessitates fairness.
Maumus v. Department of Police, New Orleans, 457 So.2d 37, 49 (La.App. 4 Cir. 1984), writ denied, 461 So.2d 1054 (La.1985); State v. Marks, 503 So.2d 32, 36 (La.App. 1 Cir.1986), writ denied, 506 So.2d 110 (La. 1987).
In assessing a claim of governmental misconduct, the trial court must decide if governmental participation is so outrageous or fundamentally unfair that it deprives a defendant of due process or if the government's misconduct moves the court in the exercise in its supervisory jurisdiction over the administration of criminal justice to hold that the defendant was "entrapped as a matter of law." State v. Caldwell, 616 So.2d 713 (La.App. 3 Cir.1993), writ granted in part on other grounds, 620 So.2d 859 (La.1993) citing, U.S. v. Graves, 556 F.2d 1319 (5th Cir.1977), cert. denied, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978). See also, U.S. v. Yater, 756 F.2d 1058, 1065 n. 11 (5th Cir.1985), cert. denied, 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). Furthermore,
... [T]he governmental misconduct defense will be recognized only in the rarest and most outrageous circumstances. It requires not only government over involvement in the charged crime, but also a passive role by the defendant. A defendant who actively participates in the crime may not avail himself of the defense. State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La. 1990); State v. Boyd, [548 So.2d 1265 (La. App. 2d 1989)] supra.

*471 State v. Smith, 614 So.2d 778 (La.App. 2 Cir.1993).
The issue of whether or not the prosecution of a defendant should be barred as a result of governmental misconduct is a question of law for the trial judge. State v. Caldwell, supra.
The defendant argues that the actions of the police officers in setting up a "sting operation" along with the failure of the officers to monitor the alleged threats that Kenny made to the defendant constituted government misconduct. However, the defendant, when questioned, admitted that she actively went and purchased the drugs. An active participant in the criminal activity cannot avail himself of the defense of government misconduct. State v. Caldwell, supra.
The defendant appears to argue that she was not a willing participant because she was threatened by Kenny. However, upon cross-examination, the defendant testified that the threat consisted only of Kenny telling her that she "better get the cocaine, he had some friends that were from out of town and he needed it bad." Under these circumstances, we see no error in the trial judge's conclusion that the police conduct did not raise to the level of being among the rarest or outrageous of circumstances and in his denial of defendant's motion to quash the bill of information.
We now turn to defendant's allegation that the evidence was insufficient to sustain a conviction for distribution of cocaine. In her challenge to the sufficiency of the evidence, the defendant does not deny that she sold the cocaine. Instead, she argues that the evidence was insufficient to convict her because the defense successfully proved an entrapment defense.
This court, in State v. Sumlin, 617 So.2d 225 (La.App. 5 Cir.1993) set forth the following:
An entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official for the purpose of obtaining evidence of the commission of an offense solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so. State v. Batiste, 363 So.2d 639 (La.1978). When entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant to commit the crime at issue as well as on the conduct of the police. State v. Batiste, supra. For entrapment to exist, a defendant must be induced in some way to engage in criminal conduct which he otherwise would not be disposed to engage in. An entrapment defense will not lie if the officers or agents have merely furnished a defendant who is predisposed to commit the crime the opportunities to do so. State v. Moody, 393 So.2d 1212 (La.1981).
The entrapment defense is composed of two elements: 1) an inducement by a state agent to commit an offense, and 2) lack of predisposition to commit the offense on the part of the defendant. State v. Kerrigan, 27,846 (La.App. 2 Cir. 4/3/96), 671 So.2d 1242; Maumus v. Department of Police, New Orleans, supra. The burden of proof is on the defendant to raise the defense of entrapment and produce a preponderance of evidence that a state agent induced him to commit a crime. Once the defendant meets this burden, the state has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement, State v. Kerrigan, supra.
The question of whether a government agent induced an innocent person into committing a crime is one for the jury. See, State v. Kerrigan, supra; State v. Brand, 520 So.2d 114 (La.1988). On appeal, contentions of entrapment are reviewed under the standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Kerrigan, supra. The initial inquiry is whether the defendant proved, by a preponderance of the evidence, that he had been persuaded to commit the act. If this is found, the next inquiry is whether the state adduced evidence of the defendant's predisposition to commit the crime such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant's *472 predisposition to commit the crime and not the government's inducement which caused the conduct in question.
Here, the defendant argues that, while she admitted that she used crack cocaine, she was not predisposed to sell the narcotic, and only did so because she was threatened. However, the detectives testified that defendant was not threatened. The officers further testified that the defendant followed them out of her house to assure a sale, got into the car voluntarily and directed them to the site of the purchase, and went inside the house with the money, alone, to purchase the drugs. The defendant, upon returning to her house, voluntarily gave the officers her phone number and told them to contact her if they needed anything else. In addition, the state elicited testimony of defendant's prior conviction for possession of 104 packets of LSD.
The credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052. A rational trier of fact, finding the testimony of the detectives to be more credible than that of the defendant, could have found that the defendant was not sufficiently induced to buy the cocaine, and that she was predisposed to commit the offense.
The defendant also argues that the police action constituted "sentence entrapment." In U.S. v. Calva, 979 F.2d 119, 122-123 (8th Cir.1992) the United States Court of Appeals, Eighth Circuit, intimated that there "may exist a `sentencing entrapment' claim that arises when the government ratchets up a defendant's drug sales or other conduct merely to increase his sentence."
No court in this state has adopted "sentencing entrapment" as a defense, and we decline to now adopt such a defense. Furthermore, we do not find that the police conduct in the case, where the officers were investigating complaints of drug dealing at defendant's address, was done to enhance defendant's sentence.
In her third assignment of error, the defendant alleges the trial judge erred finding her to be a second offender when it was not established affirmatively that there was an adjudication of guilt and a legal sentence in the underlying plea proceeding. The defendant argues that the evidence of the defendant's predicate offense did not establish a prior felony conviction for purposes of enhanced sentencing under LSA-R.S. 15:529.1.
The record reflects that the State filed a multiple offender bill of information alleging the defendant to be a second felony offender under LSA-R.S. 15:529.1 et seq. While the defendant denied the allegations of the multiple bill, by a plea of not guilty, she did not file a written response challenging the validity of her prior conviction on the basis of his prior plea of guilty, nor did she object on this basis at the multiple bill hearing.
La. R.S. 15:529.1(D)(1)(b) provides:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

In this case, because the defendant did not file a written response to the bill of information alleging her to be a second offender, and because she did not challenge her predicate offense at any time before sentence was imposed, she cannot now raise the sufficiency of the predicate offense to attack her sentence *473 as a second offender. State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921.
In her fourth allegation of error, the defendant argues that her sentence is excessive and inadequately reasoned. In her sixth (supplemental) assignment of error, defendant argues that her sentence is illegally excessive.
The defendant was sentenced, as a second felony offender, to twenty-five (25) years at hard labor, to be served without the benefit of probation, parole, or suspension of sentence. The defendant argues that in light of her medical condition, the twenty-five year sentence imposed was unconstitutionally and statutorily excessive.
The Louisiana Constitution in Article 1, Section 20, prohibits the imposition of excessive punishment. Even a sentence within the prescribed statutory limit may violate a defendant's right against excessive punishment. State v. Sweeney, 443 So.2d 522 (La.1983).
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentencing is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Bradham, 94-71 (La.App. 5 Cir. 5/31/94), 638 So.2d 428. The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Riche, 608 So.2d 639 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La.1993).
Sentences must be individualized to be compatible with the offenders as well as the offenses. In deciding whether to confine a defendant or grant probation, the judge must consider certain factors enumerated in La.C.Cr.P. art. 894.1(A), (B). State v. Robicheaux, 412 So.2d 1313 (La.1982). Although not every aggravating and mitigating circumstance needs to be articulated, the record must show the sentencing court adequately considered the sentencing guidelines. State v. Marshall, 81-3115, 94-0461 (La.9/5/95), 660 So.2d 819. However, a remand for more complete compliance with Article 894.1 is not necessary when the sentence imposed is not apparently severe, State v. Russell, 397 So.2d 1319 (La.1981), or where the record otherwise clearly illumines the sentencing choice, State v. Martin, 400 So.2d 1063 (La.1981), on rehearing.
On review, this Court must ensure that the defendant's sentence was individualized and tailored to her and the particular offense she committed. State v. Lathers, 414 So.2d 678 (La.1982), appeal after remand, 444 So.2d 96 (La.1983).
In the present case, defendant was found guilty of distribution of cocaine, in violation of LSA-R.S. 40:967(A). The penalty provisions of the statute provide a range of five years to thirty years, with the first five years of said sentence being without benefit of parole, probation, or suspension of sentence. The statute also provides that the trial court may impose a fine of not more than fifty thousand dollars.
As a second felony offender, the defendant's sentence is governed by LSA-R.S. 15:529.1(A)(1)(a) which states:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
In the instant case, therefore the sentencing range for the defendant as a second felony offender is between 15 and 60 years. The defendant received a sentence of 25 years at hard labor, less than half the time allowed a second felony offender for this offense.
The defendant argues that her sentence was excessive because of her poor health and her mental condition. She argues that because of her health, (she alleges that she has cirrhosis of the liver) the twenty five year sentence amounts to life in prison. She further argues that the sentence is severe in *474 light of the fact that she only sold cocaine on the one occasion.
The record reflects that the trial court was well aware of the defendant's medical conditions. However, the trial court considered the fact that the defendant ran a "crack house" which was accessible to "young people". The record also showed that the defendant had a prior conviction for narcotics, for which she initially received a suspended sentence that was later revoked.
It is well settled that a sentence should not be set aside absent manifest abuse of discretion. State v. Frank, 94-923 (La. App. 5 Cir. 3/1/95), 652 So.2d 121; State v. Anseman, 607 So.2d 665 (La.App. 5 Cir. 1992), writ denied, 613 So.2d 989 and 613 So.2d 990 (La.1993). In this case, we see no abuse of the trial court's discretion in sentencing defendant to twenty five years.
The defendant also argues that her sentence is illegally excessive because it was imposed without benefit of parole eligibility. The minute entry and transcript of the multiple offender proceedings shows that the trial court imposed defendant's enhanced sentence without benefit of probation, parole or suspension of sentence. However, LSA-R.S. 15:529.1 G states that a sentence thereunder shall be without benefit of probation or suspension of sentence. No provision is made for denial of parole. Therefore, the defendant's sentence as a multiple offender should not have prohibited parole. The State, in brief to this court, concedes this point.
An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. C.Cr.P. art. 882. Also see, State v. Combs, 600 So.2d 751 (La.App. 2 Cir.1992), writ denied 604 So.2d 973 (La.1992); State v. Johnson, 551 So.2d 16 (La.App. 4 Cir.1989). We note that the penalty provision of the statute under which the defendant was convicted, LSA-R.S. 40:967(B)(4)(b), specifies that the first five years of sentence is to be served without parole eligibility.
Accordingly, we amend the defendant's sentence to reflect that only the first five years be served without benefit of parole eligibility.
The defendant finally alleges her trial counsel was defective in several respects, and that she was thereby prejudiced.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through post conviction relief rather than direct appeal, so as to afford the parties an evidentiary hearing before the trial court and to create an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987); State v. Brown, 384 So.2d 983(La.1980).
The record is insufficient in this case for this court to make a substantive ruling on the issue of ineffective assistance of counsel. The issue is more properly raised on application for post conviction relief filed in accordance with LSA-C.Cr.P. arts. 924 et seq. State v. Schexnayder, 96-98 (La.App. 5 Cir. 11/26/96), 685 So.2d 357.
In addition, we have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and we find that there are no errors patent in this case.
We also address defendant's motion to strike, filed in this court on January 26, 1998. In this motion, defendant seeks to strike pages 453-473 of the record. These pages contain testimony of guilty pleas the defendant tendered in unrelated cases. We deny defendant's motion to strike. We note however, that we did not consider these pages of transcript in our review of the record.

CONCLUSION
For the above discussed reasons, the defendant's conviction is affirmed. The sentence imposed is amended to reflect that only the first five years be served without parole eligibility, and as amended, is affirmed. The motion to strike filed by defendant in this court is denied.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED; MOTION TO STRIKE DENIED.

*475 ON APPLICATION FOR REHEARING

CONVICTION AFFIRMED, SENTENCE AMENDED TO DELETE ANY REFERENCE TO PAROLE INELIGIBILITY AND AS AMENDED, AFFIRMED
At the time of the commission of offense herein, on August 8, 1996, La.R.S. 40:967 provided that persons convicted of distribution of a narcotic drug (including cocaine) " shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars." Thus, the sentencing provision in effect did not require that any portion of defendant's sentence be served without benefit of parole eligibility. Accordingly, we now revise defendant's sentence to delete any provision which would deny defendant parole eligibility.