PEATROSS, J.
12Pefendant, Derunn Henderson, a/k/a “Rundown,” was charged with and subsequently convicted of two counts of distribution of cocaine. On each count, the trial judge sentenced Defendant to serve 15 years at hard labor with the first two years to be served without the benefit of probation, parole or suspension of sentence. The trial judge imposed the sentences consecutively. Defendant now appeals. For the reasons stated herein, Defendant’s convictions and sentences are affirmed.

FACTS AND PROCEDURAL HISTORY

On April 27 & 28, 2009, Defendant provided powder cocaine to an informant by the name of Jason Edwards, a/k/a Jason Israel (hereinafter referred to as Edwards). The two transactions took place at Defendant’s residence in Sibley, Louisiana, and were recorded by a police surveillance team. Defendant admits that he twice distributed cocaine to the confidential informant; but, he contends that he was entrapped into doing so, thereby committing a crime which he was not otherwise predisposed to commit.
Trial of the matter began on March 9, 2010, and the State called as its first witness, Officer Shawn Baker of the Webster Parish Sheriffs Office. At the time of trial, Officer Baker was working in the Criminal Investigation Division (CID) Narcotics unit for approximately 9 1/2 years and was the lead agent on Defendant’s case. Officer Baker testified that Edwards was a confidential informant (Cl) who had worked with the Sheriffs Office for 1½ years, during which time he had helped build 65 cases for the Sheriffs Office. Officer Baker spoke with Edwards on April 27, 2009, and asked Edwards if he knew Defendant. Edwards confirmed that he was very familiar with Defendant. Officer Baker made this initial inquiry with Edwards because several citizens in Sibley had called in to the Sheriffs Office voicing concerns over a high volume of traffic in the area near Defendant’s home late at night.
Officer Baker asked Edwards if he was capable of buying illegal substances from Defendant and Edwards replied that he would be able to do so. On April 27, 2009, Edwards was wired with audio and video surveillance and supplied with $100 of task force “buy money.” Officer Baker and Officers Marvin Garrett and Dan Weaver followed Edwards to ^Defendant’s residence in Sibley. Edwards was in Defendant’s residence for 10 to 12 minutes. Officer Baker then met Edwards in a prearranged location to collect the evidence from Edwards. Once the evidence was collected, a field test kit was used to test the substance, which tested positive as cocaine.
*555 Officer Baker then explained that similar events took place the next day on April 28, 2009. Officer Baker telephoned Edwards to confirm that he was available to go make a buy, they met at a prearranged location outside of Minden and Edwards was wired with audio and video surveillance and supplied with $100. Officer Baker followed Edwards to Defendant’s residence; Edwards made the buy, left Defendant’s residence and then met Officer Baker at another predetermined location to give him the evidence.
Officer Baker testified that officers always search the Cl and his vehicle thoroughly to make sure he has no other money, drugs or drug paraphernalia on his person or in his car. Officer Baker testified that Edwards was usually compensated at a rate of $300 an hour and had never come back unsuccessful after being sent out to make a buy. Officer Baker identified Defendant in open court and confirmed that the he was the same man that Officer Baker had seen on the April 28, 2009 videotape.
The State’s next witness was Officer Garrett, who works for the narcotics task forces of the Minden Police Department and the Webster Parish Sheriffs Department. Officer Garrett testified that he knew of anonymous reports called in to law enforcement claiming that Defendant had been selling cocaine. He further confirmed that they had two videotapes of Defendant selling cocaine on April 27 & 28, 2009.
The State’s next witness was Randall Robillard, an employee of the North Louisiana Crime Lab where he is the forensic chemistry supervisor. Robillard was tendered and accepted as an expert in the field of substance analysis with regard to the testing of controlled dangerous substances and he confirmed that the substances collected from Edwards were cocaine.
The State’s next witness was Edwards, the Cl. Edwards confirmed that he had known Defendant for about a year and a half prior to the purchases of cocaine that took place on April 27 & 28, 2009. Edwards confirmed that he often did work for detectives, including Officer Baker, |4for which he was paid substantial sums of money and that, oftentimes, he would be otherwise unemployed. Edwards verified that he and his vehicle were searched before he bought cocaine from Defendant and that he was given “buy money” to purchase the narcotics from Defendant. Edwards then confirmed Officer Baker’s testimony with regard to the undercover transactions he conducted with Defendant on April 27 & 28, 2009.
Edwards further testified that he did not try to talk Defendant into selling cocaine to him and that he had never used cocaine with Defendant. Edwards testified that he knew he would be able to buy cocaine from Defendant. When asked how he knew this, Edwards explained: “I’m saying the reason I bought the coke from him is because he the one that came to me. I seen him selling it at a party, you know.” Edwards testified that he did not tell Defendant that he was working with the police.
Edwards then confirmed that, in addition to the times that he had purchased cocaine from Defendant on April 27 & 28, 2009, he had seen Defendant sell cocaine to other people on other occasions. The following colloquy on cross-examination took place:
Q: But you don’t know of any other occasions?
A: Yeah, I know of occasion at a party that I threw.
Q: And did you see him do that?
*556 A: Yes.
Q: And who did he do it to?
A: It was a lot of different guys, you know. It was just like a big—
Q: Name — name one of them.
A: Nah. No, I’m not going to do that.
After Edwards refused to answer the question, the trial judge stopped the cross-examination and a bench conference took place. The jury was taken out of the courtroom and the court heard arguments by counsel on the questioning of the witness regarding to whom he had seen Defendant sell cocaine.
1 ¡jAfter reconvening, the judge explained, “[I]n order to show entrapment, entrapment is when it appears that an officer or someone acting for an officer instigated the defendant to commit an offense which the defendant otherwise would not have committed and had no intention of committing. It is not entrapment, however, if the defendant already had the requisite criminal intent and the officer or someone working for the officer merely furnished the defendant with the opportunity to commit the offense.”
The State then objected to the relevancy of defense counsel’s question asking Edwards to give the identities of the people to whom he had seen Defendant selling cocaine at the party. In response, defense counsel countered that he was trying to show that Defendant had no predisposition to commit the crime of distribution of cocaine because the only two times he ever distributed cocaine were to Edwards on April 27 & 28, 2009. The trial judge sustained the State’s objection and reminded defendant counsel that it was his burden to prove entrapment.
Defendant’s first witness was Ebony Hill who testified that she knows Defendant, is distantly related to the Cl, Edwards, and used to live in the Sibley Apartment Complex in close proximity to Edwards. Hill testified that Edwards did not have a reputation for being truthful. Hill further testified that Defendant was a “good law abiding citizen.”
Defendant’s next witness was his brother-in-law, Starwasky Hampton, who was also an old schoolmate of Edwards. Hampton testified that Edwards did not have a reputation in the community for being a truthful person, but that Defendant did have a reputation in the community for being a truthful person and for being a law-abiding citizen. Hampton testified that he personally had never used cocaine, but acknowledged that he was aware that Defendant had two convictions for possession of cocaine, stating, “[Y]es, he used to use it.”
Defendant then testified on his own behalf, maintaining his innocence with regard to the charges against him. He testified that he is a painter for Clement Industries where he has to participate in periodic and random drug screens and that he lives at his home with his wife and three children. He acknowledged that he had a problem with cocaine in the past, that he was addicted to cocaine in the past, that he had used cocaine as recently as [ ^approximately one year prior to trial and that he had been previously convicted of possession of cocaine in 2000 and 2003.[1]
Defendant testified that he had known Edwards for a long time, had considered him a friend and had done cocaine with him in the past. Defendant acknowledged that he was the one on the videotape delivering cocaine to Edwards, but that he was *557 not a dealer of cocaine and that no one had ever gone to his house to buy cocaine other than Edwards.
Defendant testified that the only time he had ever delivered cocaine to anyone was on April 27 & 28, 2009, when he sold it to Edwards. Defendant confirmed that, after some discussion with Edwards, he went with him to James Birden’s apartment in the Sibley Apartment Complex and purchased cocaine from Birden. Defendant then testified that he took the cocaine back to his house and later went to Edwards’ apartment. Defendant stated that he did not want to do the drug at that time because his wife was around and he wanted to be discreet so she would not know he was getting involved with the drug again. Defendant acknowledged that he had agreed to enter into a business venture with Edwards to make money selling cocaine, but that it had been Edwards’ idea to do so.
On cross-examination, Defendant was questioned about the plan that he and Edwards had for buying cocaine. Defendant confirmed that he and Edwards went in together to buy cocaine and that they each owned the cocaine. When questioned about entering into the business venture with Edwards, the following colloquy took place:
Q: But you were ready to do it weren’t you?
A: No. It wasn’t that I was ready to do it.
Q: You weren’t? You were using cocaine then weren’t you?
A: No, no. It wasn’t that I was ready to do it.
Q: Well wait you already said it was a business venture?
A: Yeah.
Q: So you were ready for some business right?
17A: I trusted him. I trusted him. Bottom line.
Defendant’s final witness was his wife, Tamaika Henderson. Ms. Henderson testified that she and Defendant had been married for seven years at the time of trial. She acknowledged that she was aware of her husband’s problem with cocaine and testified that he stopped using cocaine after his arrest several years earlier. She also testified that she would have known if Defendant had continued to use cocaine after that time and that there were no occasions where people she did not know came over to the house late at night. Ms. Henderson further acknowledged that she was aware that Defendant got rein-volved with cocaine with Edwards. She explained that she overheard Edwards ask Defendant to “go in with him” and that Edwards told Defendant that he knew how to really make some money, explaining that he knew a guy that went by the name of “Bird.”
On cross-examination, Ms. Henderson first acknowledged that she was aware that Defendant was exchanging drugs for money in their house, but then later changed her mind. The following line of questioning then took place:
Q: You were aware of that?
A: Yes.
Q: Okay. So you knew he was dealing drugs then?
A: No.
Q: Okay. That wasn’t dealing drugs?
A: No, because he wasn’t — it wasn’t his stuff. That was Jason’s stuff.
Q: I guess — so you’re telling me that your husband was just keeping Jason’s stuff, right?
A: Basically.
Q: And just charged Jason $100 every time as a storage fee?
*558 A: I don’t recall Jason giving him no $100.
|sThe State then showed Ms. Henderson portions of the videotape showing Defendant giving Edwards cocaine in exchange for $100. After Ms. Henderson viewed the two videos, she continued to maintain that Defendant was not selling cocaine for money out of their house.
As previously stated, on July 80, 2009, a bill of information was filed charging Defendant with two counts of distribution of cocaine, a Schedule II CDS. On August 31, 2009, Defendant entered a plea of not guilty. A jury trial commenced on March 9, 2010, and concluded on March 10, 2010. The jury returned a verdict finding Defendant guilty as charged on both counts. The trial judge imposed two 15-year sentences at hard labor, to be served consecutively, with the first two years of each sentence to be served without the benefit of parole, probation or suspension of sentence. Defendant did not file a motion to reconsider sentence. Defendant now appeals.

DISCUSSION

Assignment of Error Number One (verbatim): The evidence is insufficient to prove that appellant was predisposed to distribute cocaine prior to being approached by the State agent, and thus, insufficient to prove beyond a reasonable doubt that appellant was not entrapped.
Defendant argues that he met his burden of proof by a preponderance of the evidence that he was entrapped by an agent working for the State. In support of this argument, Defendant asserts that Edwards, who was working as a Cl for officers at the time, not only induced Defendant to commit the offense, but took Defendant to an individual’s apartment to buy the cocaine and provided Defendant with the money to purchase it.
Further, Defendant contends that the State did not meet its burden of proving beyond a reasonable doubt that he was predisposed to sell cocaine, prior to being approached by Edwards. Defendant asserts that the evidence shows that he had overcome his addiction to cocaine and did not start using it again until induced by Edwards. In support of the contention, Defendant avers that he stopped using the drug after his last conviction for possession of cocaine and that he has passed the periodic drug tests administered by his employer since then. Additionally, Defendant argues that Edwards’ testimony wherein he claims that Defendant had sold cocaine at a party is not credible because Edwards could not name one person that Defendant had | ^allegedly sold the cocaine to and it would not make sense for Defendant to sell cocaine at a party where his wife was present and many people would have witnessed the act. Finally, Defendant alleges that Edwards’ reason for inducing him to distribute cocaine at the time was because Edwards was unemployed, other than working undercover with the police.
The State contends that, considering the testimony presented at trial, the evidence was sufficient for a rational jury to reject Defendant’s entrapment defense and to find that the State carried its burden of proof beyond a reasonable doubt that Defendant was not induced by the Cl to commit the offense of distribution of cocaine, an offense he was not otherwise predisposed to commit.
Entrapment occurs when a state agent, to obtain evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct constituting the offense when that person is not otherwise predisposed to commit such an offense. State v. *559 Brand, 520 So.2d 114 (La.1988); State v. Presson, 39,688 (La.App.2d Cir.4/6/05), 900 So.2d 240. The entrapment defense comprises two elements: (1) an inducement by a state agent to commit an offense, and (2) lack of predisposition to commit the offense on the part of the defendant. State v. Brand, supra; State v. Presson, supra. Entrapment is an affirmative defense which must be raised by the defendant and supported by a preponderance of the evidence. Id.
Once the defendant meets this burden, the state has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement. Jacobson v. United States, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992); State v. Brand, supra. Whether a government agent induced an otherwise innocent person into committing a crime is a question to be resolved by the trier of fact. State v. Brand, supra. On appeal, claims of entrapment are reviewed under the Jackson standard. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential |10elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43, 819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913, cert. denied, — U.S. -, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, unit denied, 07-1209 (La.12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La. App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writ denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Officer Baker began investigating Defendant when he received anonymous phone calls from concerned citizens in the Sibley area that there was a high volume of traffic around Defendant’s residence at night. Based on this information, Officer Baker asked the Cl, Edwards, if he was capable of making a buy from Defendant and Edwards responded that he could probably do so, based on his previous observations of Defendant selling cocaine to others at a party. Defendant testified that he did not distribute cocaine at any time *560 other than to the Cl on April 27 & 28, 2009; however, | nboth of Defendant’s prior convictions in 2000 and 2003 were for possession of cocaine, and, additionally, Defendant admitted that he had been addicted to the drug in the past. Defendant’s history of convictions for possession of cocaine and admitted use of the drug strongly indicate that he was predisposed to commit the offense of distribution of cocaine.
The jury heard testimony from Edwards that he saw Defendant distribute cocaine on occasions prior to the transactions which took place on April 27 & 28, 2009. The jurors also heard Defendant’s testimony that he did not distribute cocaine at any time other than the two days in April when he distributed cocaine to Edwards. The jury made a credibility determination and believed the testimony of the witnesses for the State and chose not to believe the testimony of Defendant. Credibility determinations at trial go to the weight of the evidence, not the sufficiency of the evidence, and great deference is given to a jury’s decision to accept or reject the testimony of a witness. State v. Eason, supra; State v. Speed. We see no manifest error in the jury’s decision to reject Defendant’s entrapment defense and find that the State carried its burden of proof beyond a reasonable doubt that Defendant was not induced by the Cl to commit the offense of distribution of cocaine, an offense he was not otherwise predisposed to commit.
This assignment of error is without merit.
Assignment of Error Number Two (verbatim): The Trial Court erred in sustaining the objection of irrelevance during the cross examination of informant Jason Edwards.
Defendant argues that the trial judge erred in sustaining the State’s objection to the relevancy of the names of the people to whom Edwards had witnessed Defendant selling cocaine at the party. Defendant asserts that the trial judge’s decision to sustain this objection prevented Defendant from being able to elicit testimony to show Edwards’ lack of credibility or to prove whether or not Defendant was predisposed to distribute drugs prior to being approached by Edwards. Defendant further contends that the evidence was relevant and no evidentiary exception was presented to support the State’s objection. Additionally, Defendant contends that the trial judge’s | ^refusal to allow him to fully cross-examine Edwards on this issue constitutes reversible error pursuant to La. C. Cr.P. art. 102(A).
The State argues that the names of the persons that Edwards observed purchasing cocaine from Defendant on prior occasions are not relevant to the issue of whether or not Defendant was predisposed to selling cocaine on April 27 & 28, 2009. The State submits that the trial court’s ruling sustaining its objection was not an abuse of discretion and did not affect the substantial rights of Defendant.
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, the Code of Evidence or other legislation. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or by considerations of undue delay or waste of time. La. C.E. art. 403. A trial judge’s determination of the relevancy of testimony is afforded great weight and will not be disturbed absent an abuse of discretion. State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993).
*561 Confrontation rights claims are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131. Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational fact finder. State v. Haddad, 99-1272 (La.2/29/00), 767 So.2d 682, cert. denied, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001). The inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
Defendant did not dispute that he distributed cocaine to Edwards on April 27 & 28, 2009; rather, he asserted that he was induced to commit the crime of distribution of cocaine, a crime that he was not otherwise predisposed to commit. Edwards’ testimony concerning whether or not he saw Defendant distribute cocaine on previous occasions was an integral part 11sof the inquiry into whether or not Defendant was predisposed to commit the offense. The trial judge’s ruling sustaining the State’s objection to Defendant’s questioning, however, did not deprive Defendant of his ability to question Edwards as to whether or not he had previously seen Defendant distribute cocaine. It only limited the scope of Defendant’s inquiry from extracting the specific names of the people to whom Edwards had seen Defendant selling cocaine. Accordingly, we see no error in the trial judge’s ruling sustaining the State’s objection as to relevancy.
This assignment of error is without merit.
Assignment of Error Number Three (verbatim): The Trial Court erred in faffing to give the specific jury instruction requested by appellant regarding entrapment.
During trial, defense counsel verbally requested that, in addition to the language already contained in the jury instructions provided by the trial court, the following language concerning entrapment be included in the court’s charge to the jury:
The burden of proof is on the defendant to raise the defense of entrapment and produce a preponderance of evidence that a state agent induced him to commit the crime. Once a defendant meets this burden, the state has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement. State v. Kerrigan, 27,846 (La.App.2d Cir.4/3/96), 671 So.2d 1242, citing State v. Hardy, 98-25 (La.App. 5th Cir.5/13/98), 715 So.2d 466.
Defendant further requested the following language:
Where the government has induced an individual to break the law and the defense is entrapment, the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the act prior to first being approached by the government agents. Jacobson v. United States, supra.
The State argued that Defendant’s request for the above-mentioned language to be included in the jury charge should have been in writing. The State further argued that the trial court’s charge to the jury already contained language that the burden is at all times on the State to prove guilt beyond a reasonable doubt, that the court included the defense of entrapment with the Injury charge and that it would not be proper to insert the language requested by the defense.
*562 After considering the arguments of the State and Defendant, the trial judge ruled that he would not insert the language into the jury charge as requested by Defendant. The trial judge explained:
But I will follow the form that has been laid before us by the entrapment language that has been accepted by the Louisiana Courts and I will follow that form. You will have that right to argue that during your closing and I will give you that right to do so, but I will not include that language.
Defense counsel made a contemporaneous objection to the trial judge’s refusal to include the requested language. The trial judge ultimately gave the following instruction to the jury:
A defendant who is instigated or induced by a law enforcement officer or someone acting for him into the commission of a crime which he otherwise had no intention of committing is not guilty because he was entrapped.
Entrapment is shown when it appears that an officer or someone acting for an officer instigated the defendant to commit an offense which the defendant otherwise would not have committed and had no intention of committing.
It is not entrapment, however, if the defendant already had the requisite criminal intent and the officer or someone acting for him merely furnished the defendant with the opportunity to commit the offense.
The fact that an opportunity is furnished or that the defendant is aided in the commission of a crime which originated in his own mind is no defense. There’s clear distinction between inducing a person to commit a crime and setting a trap to catch a person in carrying out criminal designs of his own conception. The primary emphasis is on whether or not the defendant had a pre-disposition to commit the crime.
The reason for this defense is simple: officers of the law may not incite crime, merely to punish the criminal.
Thus if you find:
(1) That the defendant did not have an intent to commit the offense charged before being instigated to commit it; and
11B(2) That the defendant was instigated to commit the offense charged by a law enforcement officer or one acting as an officer’s agent; then you must find the defendant not guilty.
During closing argument, Defense counsel made the following statements to the jury:
The defense of entrapment has been raised in both counts of the charges filed against the defendant. A defendant who is instigated or induced by a law enforcement officer or someone acting for a law enforcement officer, Jason Israel, into committing the crime which he otherwise had no intention of committing is not guilty because he was entrapped. Entrapment is shown when it appears that an officer or someone acting for an officer, Jason Israel, instigated the defendant to commit an offense which the defendant otherwise would not have committed and had no intention of committing.
[[Image here]]
Two things must be shown. Number one, that the defendant was tricked, duped, lured. Well that’s not enough. Mr. Israel has got a camera on him. He purports to be a friend of Mr. Henderson. It’s clear that he is duping and tricking him into selling cocaine. But that’s what you have to do with drug dealers. What’s not clear is that *563 this defendant right here had a prior disposition to commit the crime.
Defendant argues that the special jury charge he requested should have been included by the trial judge because it did not require qualification, limitation or explanation. Defendant further asserts that the trial judge’s failure to include the requested language in the jury charge resulted in the jury not having complete instructions with regard to the State’s burden of proving predisposition beyond a reasonable doubt. Defendant argues that this failure violated his constitutional right to require the State to prove each element of the offenses charged beyond a reasonable doubt. According to Defendant, this constitutes reversible error because it prejudices substantial rights of the accused.
The court is required to include the law applicable to the case in its charge to the jury. La. C. Cr. P. art. 802. The state and the defendant have the opportunity before argument to submit to the court any requests for 11fispecial written charges for the jury. La. C. Cr. P. art. 807. Article 807 further provides:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Failure to give a requested jury instruction is reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused or a substantial violation of a constitutional or statutory right. State v. Tate, supra; State v. Spears, 39,302 (La.App.2d Cir.9/27/06), 940 So.2d 135, writ denied, 06-2704 (La.8/31/07), 962 So.2d 424, cert. denied, 552 U.S. 1312, 128 S.Ct. 1888, 170 L.Ed.2d 747 (2008).
We do not find the trial judge’s decision not to include the language requested by Defendant to be prejudicial to the substantial or constitutional rights of Defendant or to constitute a miscarriage of justice. Edwards testified for the State and verified that he had seen Defendant distribute cocaine prior to the distributions on April 27 & 28, 2009. Defendant called several witnesses who testified to the contrary, stating that he was not known as a drug dealer or known to distribute cocaine. The State and Defendant both had opportunities to elicit testimony concerning Defendant’s predisposition to distribute cocaine or lack thereof. Furthermore, Defendant was given an opportunity during closing argument to further explain to the jury the burdens of proof on the issue of entrapment.
This assignment of error is without merit.
Assignment of Error Number Four (verbatim): The Trial Court erred in imposing an excessive sentence.
La. R.S. 40:967(B)(4)(b) pertains to penalties for distribution of a Schedule II CDS and provides:
Distribution, dispensing, or possession with intent to produce, manufacture, distribute, or dispense cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule 11(A)(4) of R.S. 40:964 or oxycodone as provided in Schedule II(A)(l)(o) of R.S. 40:964 or methadone as provided in Schedule II(B)(11) of R.S. 40:964 shall be 117sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than *564 fifty thousand dollars. (Emphasis added.)
In accordance with the sentencing guidelines set forth above, the trial judge sentenced Defendant to serve two separate terms of 15 years at hard labor, one for each count, with the first two years of each sentence to be served without the benefit of probation, parole or suspension of sentence, with the sentences to run consecutively. Defendant acknowledges that the sentences imposed by the trial judge are within the guidelines of the statute, but argues that they are excessive nonetheless. Defendant further argues that there is no particular justification in the record for the imposition of consecutive sentences and that the sentences are grossly disproportionate to the crimes committed.
The State argues that the circumstances of this case in conjunction with Defendant’s criminal history support the sentence imposed by the court. The State points to the fact that the trial judge gave reasons for the sentence, noting that Defendant was a third-felony offender and that he took cognizance of the statutory criteria set forth in La. C. Cr. P. art. 894.1.
The State also contends that the consecutive sentences are justified given the fact that Defendant received midrange hard labor sentences of 15 years on each count with the maximum sentence for each count being 30 years. The State further submits that the sentences imposed do not shock the conscience considering the harm done to society by Defendant.
The record reveals that Defendant did not file a motion to reconsider sentence. When a defendant fails to timely file a motion to reconsider sentence under La. C. Cr. P. art. 881.1, the appellate court’s review is limited to the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Jones, 41,449 (La.App.2d Cir.9/20/06), 940 So.2d 61; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a 11spurposeless and needless imposition of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Hardy, 39,233 (La. App.2d Cir.1/26/05), 892 So.2d 710.
Defendant was found guilty on two counts of distribution of cocaine, a Schedule II, CDS. Each count carries a sentencing range of 2 to 30 years. La. R.S. 40:967. At sentencing, the trial judge fully considered the contents of Defendant’s presentence investigation (PSI) report. The PSI report indicated that Defendant’s criminal record included a conviction for possession of a controlled substance in 2000 and two convictions of possession of Schedule II CDS, cocaine and methamphetamine, in 2003. The PSI also revealed that Defendant pled guilty to a charge of aggravated battery in August 1993. The trial judge then reviewed Defendant’s social history as contained in the PSI with regard to his family background, his level of education and his current family situation with his wife and children.
*565 The trial judge then noted that Defendant was a third-felony offender[2] and that the PSI report contained a recommendation that the sentences for each count run consecutively. The trial judge then sentenced Defendant to two 15-year terms at hard labor, to be served consecutively, with the first two years of each term to be served without the benefit of parole, probation or suspension of sentence.
Defendant was sentenced to a total of 30 years’ imprisonment which is within the sentencing range for one charge of the offense of distribution of a Schedule II CDS under La. R.S. 40:967. Since Defendant was found guilty of two separate counts, he faced a maximum sentence of up to 60 119years. Accordingly, we do not find the trial judge’s imposition of two 15-year consecutive sentences, an aggregate sentence of 30 years, to be constitutionally excessive for this third-felony offender.
This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the convictions and sentences of Defendant, Derunn Henderson, are affirmed.
AFFIRMED.

. Defendant did not have a trial in either of those cases and accepted probation for both charges after pleading guilty.

. The record reflects that the State intended to file a multiple offender bill, but neither a copy of any multiple offender bill nor a transcript from any multiple offender hearing is included in the record.